UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ODILLIA MUTAKA MWANI, *et al..*,

  Plaintiffs,

    v.

USAMA BIN LADIN and *AL QAEDA*,

  Defendants.

Civil Action No. 99-125 (CKK)

MEMORANDUM OPINION
(September 28, 2006)

On September 30, 2002, this Court issued an Order and accompanying Memorandum Opinion denying with prejudice Plaintiffs' [51] "Renewed Motion for Entry of Default Against Usama Bin Ladin and Al Qaeda" on the grounds that Plaintiffs failed to prove that the Court had personal jurisdiction over Defendants. On appeal, the instant circuit reversed and remanded in an opinion of first impression on the grounds that "[P]laintiffs have satisfied their burden of showing that the district court can properly exercise personal jurisdiction over [Osama bin Laden and *al Qaeda*[1]]." *Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005).

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "[o]nce a defendant fails to file a responsive answer, he is in default, and an entry may be made by either the clerk or the judge." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980); Fed. R. Civ. P. 55(a). Nonetheless, "[b]efore a default can be entered, the court must have jurisdiction over the party

---

[1] The Court, unless quoting material in which such names are spelled differently, shall spell the Defendants names as they appear in the appellate court decision, although the case caption in the instant case and various of Plaintiffs' filings reflect alternate spellings.

against whom the judgment is sought. . . ." 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2682 (3d ed. 1998). While it has been established that the Court has personal jurisdiction over the parties, Plaintiffs also must provide this Court with a sufficient basis to support its exercise of subject matter jurisdiction over Plaintiffs' claims. *See Mwani*, No. 99-125, slip. op. [56] at 3 n.4 (D.D.C. Sept. 30, 2002) (withholding analysis on the Court's subject matter jurisdiction over Plaintiffs' claims). Based on the arguments presented by Plaintiffs and the relevant statutes and case law, this Court finds that it properly has subject matter jurisdiction over Plaintiffs' claims and thereby GRANTS the presently pending [79] "Plaintiffs' Motion for Entry of Default Against Defendants Usama Bin Laden and Al Qaeda Under *Sosa*."

## I. BACKGROUND

Given its long procedural history, the facts underlying this case have been presented throughout several opinions. In any event, the relevant portions of these opinions will be incorporated here. *See, e.g.*, *Mwani*, No. 99-125, slip. op. [56] (D.D.C. Sept. 30, 2002); *Mwani v. Bin Ladin*, No. 99-125, slip op. [47] (D.D.C. March 15, 2001); *Mwani v. Bin Ladin*, No. 99-125, slip op. [37] (D.D.C. Nov. 19, 1999). In brief, Plaintiffs represent a proposed class of over 5,000 Kenyan citizens who are the victims, survivors, relatives, and businesses who have suffered harm as a result of a truck-bomb exploding outside the United States Embassy in Nairobi, Kenya during August of 1998. *See* Am. Compl. at 89. Plaintiffs allege that Defendant Osama bin Laden orchestrated this bombing through the *al Qaeda* terrorist network. *See id.* Further, Plaintiffs allege that Defendants did "willfully, maliciously and with a depraved indifference to life . . . cause the loss, injury and damage set forth in this Complaint." *Id.* at 145.

This Court had previously stayed class certification, pending an entry of default against Defendant. *Mwani v. Bin Ladin*, No. 99-125, order (D.D.C. Feb. 3, 2000). Entry of default, however, is currently contingent on this Court's jurisdiction over the parties and their claims. As it has been determined that the instant Court has personal jurisdiction over Plaintiffs, the issue now before the Court is whether Plaintiffs' claims satisfy the subject matter jurisdiction requirements of the Alien Tort Claims Act, 28 U.S.C. § 1350 (2005).

## II. LEGAL STANDARD

Plaintiffs assert that jurisdiction over their claims against Defendants lies in the Alien Tort Claim Act ("ATCA"), 28 U.S.C. § 1350. Am. Compl. at 88. Accordingly, "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Those claiming jurisdiction under the ATCA must allege facts sufficient to establish that: (1) they are aliens; (2) they are suing for a tort; and (3) the tort in question has been committed in violation of the law of nations or a treaty of the United States. *See Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1996) (holding that the district court had subject matter jurisdiction pursuant to the ATCA over tort claims brought by citizens of Bosnia-Herzegovina for torts committed, *inter alia*, in connection with genocide); *Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20, 24, 28 (D.D.C. 2005) (failing to find subject matter jurisdiction under the ATCA where plaintiffs alleged claims unrecognized by the law of nations); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 99–100 (D.D.C. 2003) (holding that the ATCA confers subject matter jurisdiction for tort claims alleged by foreign victims of the September 11, 2001 terrorist attacks in New York and Washington, D.C.); *see also* 3C Am. Jur. 2d *Aliens and Citizens* § 2122 (2006) (pleading "merely

a colorable violation of the law of nations" is an insufficient basis for jurisdiction). Moreover, in evaluating a claimant's pleadings under the ATCA, "courts must conduct a more searching merits-based inquiry" than is ordinarily required "in a less sensitive arena." *Exxon Mobile*, 393 F. Supp. 2d at 24; *see also Kadic*, 70 F.3d at 238 (comparing this more stringent analysis to that conducted for federal question jurisdiction under 28 U.S.C. § 1331).

With regard to the ATCA's third element, the requirement of a violation of the law of nations, the Supreme Court has recently provided guidance as to the jurisdictional effect of the ATCA since its enactment in 1789. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 724, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004):

> [A]lthough the [28 U.S.C. § 1350] is a jurisdictional statute creating no *new* causes of action, the reasonable inference from the historical materials is that the statute was intended to have practical effect the moment it became law. The jurisdictional grant is best read as having been enacted on the understanding that the common law would provide a cause of action for the modest number of international law violations with a potential for personal liability at the time.

*Id.* (emphasis added). Based on this understanding of the ATCA's purpose, the Court held that the ATCA provides the jurisdictional basis for tort claims based upon violations of international law. *Id.* at 725. Violations of international law, however, are to be understood in terms of their development through contemporary federal common law. *See id.* ("[W]e think courts should require any claim based up the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized."); *see also Filartiga v. Pena-Irala*, 630 F.2d 876, 881 (2d Cir. 1980) ("Thus it is clear that courts must interpret international law not as it was in 1789, but as it has evolved and exists among the nations of the world today."); *Tel-*

*Oren v. Libyan Arab Republic*, 726 F.2d 774, 781 (D.C. Cir. 1984) (regarding the process of identifying contemporary international law under the ATCA as placing "an awesome duty on federal district courts"). Thus, in order for a present-day contravention of the law of nations to be more than merely colorable, the specificity and acceptance of such violations must equal those accepted when the ATCA was adopted in 1789. *Sosa,* 542 U.S. at 732, 124 S. Ct. 2379; *see also Kadic*, 70 F.3d at 238–39 (requiring "universal[]" acceptance for claims raised under the ATCA). These include, principally, norms proscribing maritime piracy, violations of safe conducts, and infringements of the rights of ambassadors. *Sosa*, 542 U.S. at 715, 124 S. Ct. 2379 ("It was this narrow set of violations of the law of nations, admitting of a judicial remedy and at the same time threatening serious consequences in international affairs, that was probably on [the] minds of the men who drafted the [ATCA] with its reference to tort.").

### III.  DISCUSSION

An examination of the Complaint reveals that Plaintiffs' claims for relief sound in tort, and that the proposed class of Plaintiffs (including presently named Plaintiffs) is constituted entirely of aliens. *See* Am. Compl. at 89, 144. Here, analyzing the fecundity of Plaintiffs' assertion of subject matter jurisdiction requires only an examination of their claims under the law of nations. *See Exxon Mobile*, 393 F. Supp. 2d at 24 (employing the same three-part analysis of the ATCA's jurisdictional elements). In light of *Sosa* and the instant circuit's earlier opinion in this case, Plaintiffs urge this Court to recognize subject matter jurisdiction under the ATCA in light of Defendants' actions infringing on the rights of ambassadors. *See* [79] Pls.' Mot. Entry Default at 2 (requesting that the court rule in conformity with "the law of nations that safeguards diplomatic personnel against murder . . . and injury"); *Mwani*, 417 F.3d at 14 n.14 (stating that

Plaintiffs' "contention that bin Laden and al Qaeda attacked the American embassy intending . . . to kill American diplomatic personnel inside, would appear to fall well within [the 18th-century] paradigms" recognized by *Sosa* that proscribe "'assault against an ambassador'") (quoting *Sosa* 542 U.S. at 715, 124 S. Ct. 2379).[2]

Beginning with cases based on violations of the law of nations recognized in 1789, and ending with contemporary acknowledgment of this precedent, there is ample support for Plaintiffs assertion that this Court has jurisdiction over Plaintiffs' claims. *Compare Sosa*, 542 U.S. at 715, 124 S. Ct. 2379 (recognizing that when the ATCA was adopted, causes of action based upon assaults against ambassadors were grounded in the notion that such breaches of the law of nations "impinged upon the sovereignty of [a] foreign nation and if not adequately redressed could rise to an issue of war"), *and Respublica v. De Longchamps*, 1 U.S. (1 Dall.) 111, 116, 1 L. Ed. 59 (1784) (describing an attack on a French public minister as a crime that "not only affronts the Sovereign he represents, but also hurts the common safety and well being of nations;" further, such perpetrators are "guilty of a crime against the whole world"), *with Narenji v. Civiletti*, 617 F.2d 745, 752 (D.C. Cir. 1980) (justifying certain immigration regulations pertaining to Iranians by stating that "Iran at the present time is the only nation that

---

[2] Although Plaintiffs argue that this Court should recognize that terrorist acts violate the law of nations, [79] Pls.' Mot. Entry Default at 2, the Court shall limit its basis for subject matter jurisdiction under the ATCA to the infringement of the rights of ambassadors, as it is unnecessary to reach the larger issue.  The law is seemingly unsettled with respect to defining terrorism as a violation of the law of nations.  *See, e.g.*, *Tel-Oren*, 726 F.2d at 795 (D.C. Cir. 1984) ("Indeed, the nations of the world are so divisively split on the legitimacy of such aggression [terrorism] as to make it impossible to pinpoint an area of harmony or consensus."); *United States v. Yousef*, 327 F.3d 56, 106-108 (2d Cir. 2003) ("We regrettably are no closer now than eighteen years ago to an international consensus on the definition of terrorism or even its proscription; the mere existence of the phrase 'state-sponsored terrorism' proves the absence of agreement . . . .  We thus conclude . . . that terrorism–unlike piracy, war crimes, and crimes against humanity–does not provide a basis for universal jurisdiction.").

has with force and violence transgressed upon American property and imprisoned our diplomatic envoys as hostages in violation of our treaty and international law"), *and Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 113 (D.D.C. 2005) (describing the bombing attacks on the United States Embassy in Lebanon in 1983 as "'clearly contrary to the precepts of humanity as recognized in both national and international law'") (quoting *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 107 (D.D.C. 2000)).

Further authority for this Court's jurisdiction under the ATCA for contravention of the law of nations stemming from attacks on American diplomatic missions can be found in treaties to which the United States is a party. *See* Organization of American States Convention on Terrorism art. 1, Oct. 20, 1976, 27 U.S.T. 3949, T.I.A.S. No. 8413 (agreeing to take all measures considered effective "to prevent and punish acts of terrorism, especially kidnapping, murder, and other assaults against the life or physical integrity of those persons *to whom the state has the duty according to international law to give special protection . . . .*") (emphasis added); U.N. Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons, Including Diplomatic Agents preamble, Feb. 20, 1977, 28 U.S.T. 1975, T.I.A.S. No. 8532 (mandating signatories implement penalties to punish attacks on diplomatic personnel, since crimes against these persons "create[s] a serious threat to the maintenance of normal international relations which are necessary for co-operation among States").

Thus, the attack on the United States Embassy in Nairobi, Kenya alleged in Plaintiffs' Complaint impinged the diplomatic mission of the United States and directly infringed on the rights of ambassadors, which was and has been a clear violation of the law of nations since the

inception of the ATCA. As such, the Court properly exercises subject matter jurisdiction over Plaintiffs' claims.

## IV. CONCLUSION

Based on the aforementioned reasoning, the Court shall GRANT [79] "Plaintiffs' Motion for Entry of Default Against Defendants Usama Bin Laden and Al Qaeda Under *Sosa*." An appropriate Order accompanies this Memorandum Opinion.

Date:   September 28, 2006

                                                   /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge