UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ODILLIA MUTAKA MWANI, *et al..*,<br><br>    Plaintiffs,<br><br>    v.<br><br>USAMA BIN LADIN and *AL QAEDA*,<br><br>    Defendants. | Civil Action No. 99-125 (CKK) |

MEMORANDUM OPINION
(August 5, 2007)

Presently before the Court is Plaintiffs' [85] "Motion to Set a Date for Ex Parte Proof and for Entry of Default Judgment Against Defendants Usama Bin Laden and Al Qaeda," filed on January 31, 2007. In Plaintiffs' Motion, Plaintiffs request that an evidentiary hearing be held before a jury empaneled to determine damages in the instant case, in which the Court entered default against the Defendants on September 28, 2006. After considering the pending motion, the history of the case, the Amended Complaint, and the relevant statutes, rules, and case law, the Court shall GRANT IN PART and DENY WITHOUT PREJUDICE IN PART Plaintiffs' [85] "Motion to Set a Date for Ex Parte Proof and for Entry of Default Judgment Against Defendants Usama Bin Laden and Al Qaeda." Specifically, the Court agrees that an evidentiary hearing shall be held on the issue of damages. However, as Plaintiffs are not statutorily entitled to a jury trial and as the Court would need more information than that presently before it as to why a jury determination of damages would be appropriate and how it would be practicable considering the number of Plaintiffs in this case and the choice of law questions at issue, the Court shall deny without prejudice Plaintiffs' request for a jury trial rather than a bench trial on the issue of

damages. Furthermore, Plaintiffs shall provide additional briefing on choice of law issues with respect to their damages claims and additionally shall indicate the suggested manner in which an evidentiary hearing would be conducted in light of the number of Plaintiffs in this case, including an estimate of the length of time needed to present Plaintiffs' case on damages.

## I. BACKGROUND

Given its long procedural history, the facts underlying this case have been presented throughout several opinions. In any event, the relevant portions of these opinions will be incorporated herein. *See, e.g.*, *Mwani v. Bin Ladin*, No. 99-125, slip op. [81] (D.D.C. Sept. 28, 2006); *Mwani v. Bin Ladin*, No. 99-125, slip op. [56] (D.D.C. Sept. 30, 2002); *Mwani v. Bin Ladin*, No. 99-125, slip op. [47] (D.D.C. March 15, 2001); *Mwani v. Bin Ladin*, No. 99-125, slip op. [37] (D.D.C. Nov. 19, 1999). In brief, the 523 Plaintiffs[1] include Kenyan citizens who are the victims, survivors, relatives, and businesses who have suffered harm as a result of a truck-bomb exploding outside the United States Embassy in Nairobi, Kenya during August of 1998. *See* Am. Compl. at 89. Plaintiffs allege that Defendant Osama bin Laden orchestrated this bombing through the *al Qaeda* terrorist network.[2] *See id.* Furthermore, Plaintiffs allege that Defendants did "willfully, maliciously and with a depraved indifference to life . . . cause the loss, injury and damage set forth in this Complaint." *Id.* at 145.

---

[1] *See* [84] Plaintiffs' Status Report (indicating that Plaintiffs will not seek class certification (previously stayed by the Court) such that the present action has been brought by 523 Plaintiffs). *Id.* at 1-2.

[2] The Court, unless quoting material in which such names are spelled differently, shall spell the Defendants names as they appear in *Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005), although the case caption in the instant case and various of Plaintiffs' filings reflect alternate spellings.

In *Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005), the D.C. Circuit held that the instant court has personal jurisdiction over the Parties in this case. Furthermore, on September 28, 2006, this Court issued an [80] Order and accompanying [81] Memorandum Opinion, holding that the Court has subject matter jurisdiction over Plaintiffs' claims pursuant to the Alien Tort Claims Act (ATCA), 28 U.S.C. § 1350, and granting Defendants' Renewed Motion for Entry of Default: "Thus, the attack on the United States Embassy in Nairobi, Kenya alleged in Plaintiffs' Complaint impinged the diplomatic mission of the United States and directly infringed on the rights of ambassadors, which was and has been a clear violation of the law of nations since the inception of the ATCA. As such, the Court properly exercises subject matter jurisdiction over Plaintiffs' claims." [81] Mem. Op. at 7-8.

Plaintiffs filed the instant motion on January 31, 2007, seeking an ex parte proof hearing and entry of default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55(b) of the Federal Rules of Civil Procedure. In Plaintiffs' Motion, Plaintiffs argue for a jury determination of damages and set forth their intent to seek compensatory and punitive damages. Pls.' Mot. for Default J. at 2-11.

## II.   LEGAL STANDARD & DISCUSSION

*A.   Federal Rule of Civil Procedure 55(b)*

Federal Rule of Civil Procedure 55(b) sets forth the procedural framework for the entry of default judgment and speaks directly to the issue of the parties' right to a jury trial. It reads, in relevant part:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter,

the court may conduct such hearings or order such references as it deems necessary and proper and *shall accord a right of trial by jury to the parties when and as required by any statute of the United States.*

Fed. R. Civ. P. 55(b)(2) (emphasis added).[3] When this Court granted Plaintiffs' Motion for Entry of Default, it accepted as true all of Plaintiffs' well-pleaded allegations as set forth in the Amended Complaint. *See Shepherd v. Am. Broad. Cos.*, 62 F.3d 469, 492 (D.D.C. 1994), *rev'd on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995) ("After default, allegations will be taken as true if they are 'well-pleaded,' that is, if they are not made 'indefinite or erroneous by other allegations in the same complaint,' not contradicted by '"indisputable facts" . . . which could not possibly be rebutted if the non-defaulting party were permitted a trial,' not contrary to uncontested facts in the record, and provable by legitimate evidence." (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971))).[4] However, in considering a motion for default judgment, "[a]lthough a default judgment forces a defendant to concede liability, it does not force it to concede liability for the amount of damages that a plaintiff has claimed." *Id.* at 491. When a defendant is held in default, the court should hold an evidentiary hearing to determine an appropriate remedy if damages are not for a sum certain. *See Flynn v. Mastro*

---

[3] A newly amended Rule 55 will become effective as of December 1, 2007. The relevant text will read: "The court may conduct hearings or make referrals–*preserving any federal statutory right to a jury trial*–when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55 (2007) (effective Dec. 1, 2007) (emphasis added). *See* 2007 US ORDER 30 (C.O. 30).

[4] Referring to the instant case, the D.C. Circuit previously stated that "[t]he plaintiffs' allegations and evidence were that bin Laden and *al Qaeda* orchestrated the bombing of the American embassy in Nairobi, not only to kill both American and Kenyan employees inside the building, but to cause pain and sow terror in the embassy's home country, the United States." *Mwani v. Bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005).

*Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002) ("Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain. . . . Moving for a default judgment, the plaintiff must prove its entitlement to the requested damages"). "In the Rule 55 context, a claim is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of defendant's default." *KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003).

In the instant case, the Court concurs with Plaintiffs' position that an evidentiary hearing is necessary to determine the appropriate amount of damages to be awarded to Plaintiffs, as Plaintiffs request damages to compensate for the loss of human life, serious bodily injury, emotional distress, business losses, and personal injury claims–none of which evoke a sum certain or definite amount. However, the more difficult issue before the Court is whether this determination of damages should transpire via a jury trial on the issue of damages or an evidentiary hearing before the Court. In other words, looking to the text of Federal Rule of Civil Procedure 55(b), the Court must determine whether any "statute of the United States" "accord[s] a right of trial by jury" to Plaintiffs on the issue of damages in this case.

    B.    *Federal Rule of Civil Procedure 55(b) does not typically require a jury to determine damages once a default judgment has been entered.*

Plaintiffs argue that because a jury trial on damages must be held after default has been entered where one is "required by *any statute* of the United States," Fed. R. Civ. P. 55(b)(2) (emphasis added), this statutory element is satisfied by Federal Rule of Civil Procedure 38, which was authorized by federal statute though it is not a statute in and of itself. Pls.' Mot. for Default

J. at 3.  Pursuant to Federal Rule of Civil Procedure 38(a), "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."  Fed. R. Civ. P. 38(a).  Plaintiffs point to no specific *statute* (as referenced in the text of Rule 38(a)) that guarantees the Parties in this case the right to a trial by jury.  Pursuant to the Seventh Amendment, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.  However, the Supreme Court has interpreted the Seventh Amendment to guarantee the right to a jury trial only where a matter is one that would have been tried in courts of law rather than courts of equity or admiralty in the eighteenth century.  *See Tull v. United States*, 481 U.S. 412, 417-418 (1987).

While no precedent from this circuit exists on this issue,[5] several other circuits (and district court opinions from this and other circuits) have explicitly rejected Plaintiffs' claim that the Federal Rules of Civil Procedure and the Seventh Amendment trigger a right to a jury determination of damages with respect to a Rule 55(b) evidentiary motion.  *See Olcott v. Del.*

---

[5] Plaintiffs cite to *Barber v. Turberville*, 218 F.2d 34, 37 n.1 (D.C. Cir. 1954), in support of their position, a case in which a default judgment was entered against the defendant and the plaintiff had included a demand for a jury trial in the complaint.  Pls.' Mot. for Default J. at 3.  However, while the D.C. Circuit in *dicta* stated that "[i]t may well seem that even after the default, the issue as to damages should have been submitted to the jury in accordance with the provisions of Rule 55(b) . . . at least to determine the amount of damages," 218 F.2d at 37 (internal quotation omitted), the D.C. Circuit actually vacated the district court's entry of default judgment pursuant to Federal Rule of Civil Procedure 60(b), explicitly stating that "[t]he disposition of this case makes it unnecessary for us to pass upon the point as to whether the plaintiff's demand for trial by jury was properly withdrawn . . . ." *Id.* at 37.

*Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003), *cert. denied*, 540 U.S. 1089 (2003) ("Defendants do not have a constitutional right to a jury trial following entry of default"); *Graham v. Malone Freight Lines, Inc.*, 314 F.3d 7, 16 (1st Cir. 1999) ("Neither the Seventh Amendment nor the Federal Rules of Civil Procedure require a jury trial to assess damages after entry of default in these circumstances."); *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 693 n.15 (1st Cir. 1993) ("However, 'after a default judgment has been entered under Fed. R. Civ. P. 37(b)(2), a party has no right to jury trial under either Fed. R. Civ. P. 55(b)(2), . . . or the Seventh Amendment.'" (citing cases)); *Dierschke v. O'Cheskey*, 975 F.2d 181, 185 (5th Cir. 1992) ("[I]n a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages." (quotation and citation omitted)); *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) ("Rule [55(b)(2)] does not itself require a jury trial on the issue of damages. . . . Nor does the appellant have a constitutional right to a jury trial under these circumstances, since the Seventh Amendment right to trial by jury does not survive a default judgment." (citing cases)); *Shepherd*, 862 F. Supp. at 492 n.4 ("The parties are clearly not entitled to a jury trial on the damages question. The sole federal statute that entitles defaulted parties to a jury damages trial is 28 U.S.C. § 1874, which governs actions to recover for certain forfeitures." (citing 10 Wright & Miller, *Federal Practice and Procedure* § 2688 at 452 (1983))). *But see Coleman v. Smith*, 814 F.2d 1142, 1145 (7th Cir. 1987) (in this 42 U.S.C. § 1983 action, a jury trial was held to determine damages after default was entered with respect to liability; however, whether a jury should be used to determine damages was not at issue). Thus, as a logical next step, the Court shall look to the ATCA first in determining whether the ATCA provides any basis for Plaintiffs' alleged entitlement to a jury determination of damages, and

second in exercising its discretion to determine whether damages in the instant case would be more appropriately ascertained via a jury trial or a bench proceeding if a jury trial is not required.

    C.    *The ATCA does not provide a statutory basis for a jury determination of damages. Furthermore, default judgments in cases brought pursuant to the ATCA typically are accompanied by a determination of damages by the court rather than a jury.*

Plaintiffs asserted (and the Court concluded) that subject matter jurisdiction over Plaintiffs' claims lies in the ATCA. Am. Compl. at 88; [81] Mem. Op. at 7-8. The ATCA, in its entirety, reads: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Those claiming jurisdiction under the ATCA must allege facts sufficient to establish that: (1) they are aliens; (2) they are suing for a tort; and (3) the tort in question has been committed in violation of the law of nations or a treaty of the United States. *See Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1996) (holding that the district court had subject matter jurisdiction pursuant to the ATCA over tort claims brought by citizens of Bosnia-Herzegovina for torts committed, *inter alia*, in connection with genocide); *Doe I v. Exxon Mobil Corp.*, 393 F. Supp. 2d 20, 24, 28 (D.D.C. 2005) (failing to find subject matter jurisdiction under the ATCA where plaintiffs alleged claims unrecognized by the law of nations); *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 99-100 (D.D.C. 2003) (holding that the ATCA confers subject matter jurisdiction for tort claims alleged by foreign victims of the September 11, 2001 terrorist attacks in New York and Washington, D.C.); *see also* 3C Am. Jur. 2d *Aliens and Citizens* § 2122 (2006) (pleading "merely a colorable violation of the law of nations" is an insufficient basis for jurisdiction). Plaintiffs' assertion of subject matter jurisdiction withstood this Court's "'more searching merits-based inquiry [than that required] in a less sensitive arena.'" *See* [81] Mem.

Op. at 4 (quoting *Exxon Mobil*, 393 F. Supp. 2d at 24) (citing *Kadic*, 70 F.3d at 238 (comparing this more stringent analysis to that conducted for federal question jurisdiction under 28 U.S.C. § 1331)). However, the ATCA is a jurisdictional statute and does not create an independent cause of action,[6] nor does it afford any procedural guidance as to the manner in which damages should be calculated.

In addition, the Court notes that an exhaustive survey of federal cases reveals that a bench (rather than a jury) determination of damages is the norm in cases brought pursuant to the ATCA where default has been entered. This is the case even where the amount of damages is uncertain, where punitive damages are sought, and where the determination of damages is necessarily complicated by choice of law questions. *See Doe v. Saravia*, 348 F. Supp. 2d 1112, 1159 (E.D. Cal. 2004) (the court awarded compensatory and punitive damages related to the assassination of an El Salvadorian archbishop after considering the availability of punitive damages under El Salvadorian law); *Tachiona v. Mugabe*, 234 F. Supp. 2d 401, 406, 423 (S.D.N.Y. 2002) (after entering default and receiving a report and recommendation from a magistrate judge on the issue of damages, the district court requested additional briefing on choice of law issues with respect to

---

[6] *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004) ("All Members of the Court agree that § 1350 is only jurisdictional."); *see also Harbury v. Hayden*, 444 F. Supp. 2d 19, 38 (D.D.C. 2006) ("Simply, the ATCA cannot be the subject of a 'violation' of a federal statute because the ATCA provides no substantive rights that could be the subject of any claimed violation."). "The jurisdictional grant is best read as having been enacted on the understanding that the common law would provide a cause of action for the modest number of international law violations with a potential for personal liability at the time." *Sosa*, 542 U.S. at 724; *see also Doe v. Saravia*, 348 F. Supp. 2d 1112, 1144 (E.D. Cal. 2004) ("[The ATCA] does not itself provide a cause of action, but provides jurisdiction over certain international law claims, to the extent those claims have been incorporated into the common law."). In this case, the Court has already held that Plaintiffs' claims demonstrate that Defendants have infringed upon the law of nations by infringing on the rights of ambassadors, a tort recognized as an international law violation under the ATCA. *See* [81] Mem. Op. at 7-8.

the determination of damages on claims pursuant to the ATCA and ultimately awarded as part of its decision compensatory and punitive damages under the ATCA to Zimbabwe citizens for torture and extrajudicial killings); *Paul v. Avril*, 901 F. Supp. 330, 331, 335-36 (S.D. Fla. 1994) (after the defendant declined to participate in court proceedings, the court granted $41 million in compensatory and punitive damages to six Haitian victims of torture and false imprisonment); *Filartiga v. Pena-Irala*, 577 F. Supp 860, 864 (E.D.N.Y. 1984) (after entry of default, the court determined an award of damages by "look[ing] first to Paraguayan law in determining the remedy for the violation of international law").  In fact, the complicated choice of law questions accompanying the determination of an appropriate legal basis for a remedy crafted in an ATCA case necessitates court involvement in the determination of damages, at least with respect to any open legal questions.

      This case, it seems, is no different from the cases cited above in terms of the necessity of determining the legal basis for a remedy after resolution of complicated choice of law questions. In this case, Plaintiffs (which number in the hundreds) have brought their claims before this Court pursuant to the ATCA for actions that transpired and injury that occurred in Nairobi, Kenya, such that choice of law questions with respect to the assessment and availability of damages are at issue, despite Plaintiffs' apparent assumption that District of Columbia law would provide the legal basis for any court-crafted remedy.  *See* Pls.' Mot. for Default J. at 5.  As Plaintiffs in this case are not entitled under any statute to a jury determination of damages, the question of whether a jury or bench trial should be held on the issue of damages is a discretionary determination to be made by the Court.  As the Court would need more information than that presently before it as to why a jury determination of damages would be appropriate and how it

would be practicable considering the number of Plaintiffs in this case and the choice of law questions at issue, the Court shall deny without prejudice Plaintiffs' request for a jury trial rather than a bench trial on the issue of damages.

### III.  CONCLUSION

Based on the aforementioned reasoning, the Court shall GRANT IN PART and DENY WITHOUT PREJUDICE IN PART Plaintiffs' [85] "Motion to Set a Date for Ex Parte Proof and for Entry of Default Judgment Against Defendants Usama Bin Laden and Al Qaeda." Specifically, the Court agrees that an evidentiary hearing shall be held on the issue of damages. However, as Plaintiffs are not statutorily entitled to a jury trial and as the Court would need more information than that presently before it as to why a jury determination of damages would be appropriate and how it would be practicable considering the number of Plaintiffs in this case and the choice of law questions at issue, the Court shall deny without prejudice Plaintiffs' request for a jury trial rather than a bench trial on the issue of damages.  Furthermore, Plaintiffs shall provide additional briefing on choice of law issues with respect to their damages claims and additionally shall indicate the suggested manner in which an evidentiary hearing would be conducted in a manner that conforms with the Federal Rules of Evidence[7] in light of the number of Plaintiffs in

---

[7] For example, while Plaintiffs indicate that they "will also identify representative plaintiffs to testify as fact witnesses about the bombing, and the injuries sustained as a result of the bombing," Pls.' Mot. for Default J. at 13, the Court notes that this case is not a class action, and that the concept of "summary" witnesses is typically limited to the purpose set forth in Federal Rule of Evidence 1006–to summarize "the contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court."  Fed. R. Evid. 1006; *see also United States v. Kayode*, 254 F.3d 204, 211-212 (D.C. Cir. 2001).

this case, including an estimate of the length of time needed to present Plaintiffs' case on damages. An Order accompanies this Memorandum Opinion.


Date:   August 5, 2007

                                                    /s/
                                            COLLEEN KOLLAR-KOTELLY
                                            United States District Judge