UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ODILLA MUTAKA MWANI,** *et al.*,

    **Plaintiffs,**

        v.     Civil Action No. 99-125 (JMF)

**USAMA BIN LADEN and AL QAEDA,**

    **Defendants.**

**MEMORANDUM OPINION**

This case is before me for all purposes. A number of matters are currently pending and ready for my resolution, including: 1) whether this Court retains subject matter jurisdiction over this case in the wake of a recent Supreme Court ruling; 2) whether Usama Bin Laden should be dismissed as a defendant; 3) what substantive law to apply to the case, as raised by plaintiffs in Plaintiff's [sic] Brief Pursuant to Order of January 7, 2010 [#93]; and 4) whether or not to accept Plaintiffs' Proposed Findings of Fact and Conclusions of Law [#105]. As noted below, I will only address the first matter in this Memorandum Opinion and accompanying Order.

**PROCEDURAL BACKGROUND**

The lengthy procedural history of this case has been summarized elsewhere in the record, but for the purposes of this Memorandum Opinion, a review of the most recent events is necessary.

On January 7, 2010, Judge Kollar-Kotelly issued an Opinion and Order Regarding Choice of Law [#90] holding that federal common law choice of law principles would apply to this case. Judge Kollar-Kotelly requested supplemental briefing from the plaintiffs regarding: 1) what substantive law should govern the plaintiff's claims; 2) if the law of Kenya governs, which

laws should be applied; and 3) if the substantive law of the United States governs, which laws should apply. [#90] at 9.  The plaintiffs submitted the requested briefing on January 25, 2010.  However, no official ruling was ever issued regarding which substantive law principles (e.g., Kenyan, federal common law, federal statutory law, or state common law) would govern the plaintiff's claims.

The case was then referred to me for all purposes. Order Referring Case to Magistrate Judge [#96].  In line with previous decisions by Judge Kollar-Kotelly, on January 31, 2011 through February 2, 2011, I held a "bellwether"[1] bench trial on damages to determine:  1) whether a ruling derived from evidence adduced at the proceeding is binding and to what extent, and 2) the extent to which adduced evidence is generally applicable to all plaintiffs, or whether each plaintiff must produce some evidence of damages.  The bellwether format was used to avoid the time-consuming and possibly unnecessary process of reviewing damages claims plaintiff by plaintiff.  Instead, the goal is to issue a set of general principles regarding damages, based on the small, representative sample of plaintiffs' claims, and then extrapolate those principles to the plaintiff population as a whole.

On April 18, 2011, plaintiffs' filed their Proposed Findings of Fact and Conclusions of Law regarding the bellwether trial. [#105].  I had not yet addressed that filing when the news broke that one of the defendants, Usama Bin Laden, had been killed by United States forces.  Accordingly, I instructed the plaintiffs to either file a motion for substitution of a party or show

---

[1] "In a bellwether trial procedure, a random sample of cases large enough to yield reliable results is tried to a jury.  A judge, jury, or participating lawyers use the resulting verdicts as a basis for resolving the remaining cases." Alexandra D. Lahav, Bellwether Trials, 76 Geo. Wash. L. Rev. 576, 577 (2008).  A bellwether trial may be binding or not binding on the other plaintiffs.  If it is binding, the results of the bellwether trial are extrapolated to the other plaintiffs who have similar factual circumstances and/or injuries. Id. at 581.  This method has been used in other multi-plaintiff cases stemming from terrorist-related events.  See Dammarell v. Islamic Republic of Iran 404 F. Supp. 2d 261, 271 n.1 (D.D.C. 2005).

2

cause why Bin Laden should not be dismissed from the case. Minute Order of 11/30/11. Plaintiffs responded that it would be unlikely that a suitable substitute, *i.e.* someone over whom this Court had personal jurisdiction, would be found. Plaintiffs' Response to Order to Advise Court on Substitution and to Show Cause [#107] at 2. Nevertheless, plaintiffs requested that I hold off on dismissing Bin Laden from the case "until such time as disposition is made of the claims against the remaining defendants." Id. at 2-3.

Roughly one month later, on January 10, 2012, I stayed this matter pending the outcome of a rehearing *en banc* in Doe v. Exxon Mobil Corp, 09-7135 (D.C. Cir.), which itself was stayed pending the resolution of two cases before the Supreme Court regarding the extraterritorial reach of the Alien Tort Statute[2] ("ATS"). I issued this stay out of concern that a number of recent judicial decisions and academic articles called into question the reach of the ATS to cover claims by foreign nationals for events that occurred on foreign soil. Because jurisdiction in this case rests on application of the ATS to the 523 Kenyan plaintiffs, I felt "it might well be a profligate waste of judicial resources to proceed any further in this case . . . without what may be dispositive guidance from the Supreme Court." Order [#108] at 2-3.

Finally, a decision was handed down last month in one of the previously-pending Supreme Court cases. Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659 (2013). The Court held that a canon of statutory interpretation, the "presumption against extraterritorial application" of federal statutes, limits the court's ability to hear certain claims under the ATS, and nothing in the language of the ATS itself rebutted that presumption. Id. at 1669. Put another way, the majority of the Justices agreed that, except where the claims "touch and concern the territory of the United States" with "sufficient force," the ATS could not be used to establish jurisdiction in a

---

[2] This statute is more formally known as the Alien Tort Claim Act ("ATCA"), 28 U.S.C. § 1350, although in more recent cases, it is commonly referred to as the ATS.

United States Court for a dispute between foreign nationals for conduct that occurred on foreign ground. Id.

Given that this case is between foreign nationals and a foreign group for events that occurred in Nairobi, Kenya, I requested briefing from the plaintiffs regarding whether or not subject matter jurisdiction remained over their claims in light of Kiobel's holdings. The plaintiffs submitted their response to my order to show cause on May 20, 2013. Plaintiffs' Response to Order to Show Cause [#109].

## ANALYSIS

In their Amended Complaint, plaintiffs asserted that this Court has jurisdiction over their claims via the ATS. Amended Complaint [#13] at 88. The ATS provides that district courts "shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. To establish jurisdiction under the ATS, a plaintiff must allege facts "sufficient to establish that: (1) they are aliens; (2) they are suing for a tort; and (3) the tort in question has been committed in violation of the law of nations or a treaty of the United States." Mwani v. bin Laden, Civil Action No. 99-125, 2006 WL 3422208, at *2 (D.D.C. Sept. 28, 2006) (citing Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1996); Doe I. v. Exxon Mobil Corp., 393 F. Supp. 2d 20, 24, 28 (D.D.C. 2005); and Burnette v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 99-100 (D.D.C. 2003)).

Judge Kollar-Kotelly previously found that adequate subject matter jurisdiction existed for the plaintiffs' claims because "the attack on the United States Embassy in Nairobi, Kenya alleged in Plaintiffs' Complaint impinged the diplomatic mission of the United States and directly infringed on the rights of ambassadors, which was and has been a clear violation of the

law of nations since the inception of the ATCA." Mwani, 2006 WL 3422208 at *4.  In so holding, Judge Kollar-Kotelly found that the three elements required under the ATS were met.

That ruling remains the law of this case.  However, a related but separate question remained: whether the ATS should grant jurisdiction to plaintiffs who were aliens *and* suing for a tort that occurred on foreign soil, *i.e.*, should the ATS apply to cases that are completely extraterritorial?  When the Supreme Court granted certiorari in the Kiobel case, it intended to examine whether the law of nations recognized corporate liability.  See Kiobel, 133 S. Ct. at 1663.  It was only after oral argument on that issue that the Justices requested supplemental briefing addressing the extraterritorial application of the statute.  Specifically, the Court requested briefing on "[w]hether and under what circumstances the [ATS] allows courts to recognize a cause of action for violations of the law of nations occurring within the territory of a sovereign other than the United States." Id.

The Justices were unanimous in the result, but differed in their rationales.  The majority of the Justices held that the ATS could not provide jurisdiction for foreign plaintiffs seeking redress in United States courts for conduct that occurred on foreign soil, because the presumption against extraterritorial application of federal law was not overcome by the text or history of the ATS. Id. at 1669.

The majority opinion, however, may have left open one, albeit narrow, avenue for jurisdiction over acts that occurred outside the United States.[3]  In holding that "all the relevant conduct" in the Kiobel case "took place outside the United States," and therefore jurisdiction under the ATS was improper, the majority added that "even where the claims touch and concern

---

[3] This is aside from acts involving pirates or occurring on the high seas, for which jurisdiction under the ATS remains, as such cases "do[] not typically impose the sovereign will of the United States onto conduct occurring within the territorial jurisdiction of another sovereign, and therefore carr[y] less foreign policy consequences." Kiobel, 133 S. Ct. at 1667.

5

the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." Id.  One could read this as the Court suggesting that, in some limited instances, an act occurring outside the United States could so obviously touch and concern the territory of the United States that the presumption against extraterritorial application of the ATS *is* displaced.  That is precisely what the plaintiffs argue in response to my order to show cause.  See [#109] at 18-21.

The concurring Justices each offered either support for, or different variations of, the "touch and concern with sufficient force" test elucidated by the majority.  Justices Alito and Thomas agreed outright that the Court's language left "much unanswered."  Similarly, Justice Kennedy agreed that "leav[ing] open a number of significant questions regarding the reach and interpretation of the [ATS]" was "a proper disposition." Kiobel, 133 S. Ct. at 1669 (J. Kennedy, concurring).  Justice Breyer, with whom Justices Ginsberg, Sotomayor, and Kagan joined, offered slightly different language, stating that he "would find jurisdiction under [the ATS]" where "the defendant's conduct substantially and adversely affects an important American national interest, and that includes a distinct interest in preventing the United States from becoming a safe harbor. . . for a torturer or other common enemy of mankind." Id. at 1671 (J. Breyer, concurring).

Based on these opinions, the question before me today is whether the events that occurred in and around the grounds of the United States Embassy in Nairobi, Kenya on August 7, 1998, "touched and concerned" the United States with "sufficient force" to displace the presumption against extraterritorial application of the ATS.  I conclude that they did, and jurisdiction is therefore proper.

The factual circumstances behind the torts claimed in this case are easily distinguishable from the circumstances at issue in Kiobel.  Kiobel involved Nigerian plaintiffs suing foreign corporations for allegedly assisting in various human rights violations that occurred in Nigeria. Kiobel, 133 S. Ct. at 1662.  In rejecting the idea that this case could fall under the newly-formed "touch and concern with sufficient force" test, the Court noted that mere corporate presence in the United States, as was the case for the Kiobel defendants, did not suffice.

It is obvious that a case involving an attack on the United States Embassy in Nairobi is tied much more closely to our national interests than a case whose only tie to our nation is a corporate presence here.  Ample evidence has been presented for me to conclude that the events at issue in this case were directed at the United States government, with the intention of harming this country and its citizens.  As noted by the D.C. Circuit, this attack was orchestrated "not only to kill both American and Kenyan employees inside the building, but to cause pain and sow terror in the embassy's home country, the United States." Mwani v. bin Laden, 417 F.3d 1, 13 (D.C. Cir. 2005).  Plaintiffs also presented evidence that the attackers were involved in an ongoing conspiracy to attack the United States, and overt acts in furtherance of that conspiracy took place within the United States. Id.

The Supreme Court left open the question of "just when the presumption against extraterritoriality might be 'overcome.'" Kiobel, 133 S. Ct. at 1673 (J. Breyer, concurring). Surely, if any circumstances were to fit the Court's framework of "touching and concerning the United States with sufficient force," it would be a terrorist attack that 1) was plotted in part within the United States, and 2) was directed at a United States Embassy and its employees.

Accordingly, I find that this case touches and concerns the United States with sufficient force that it falls within the narrow category of cases for which the presumption against

extraterritorial application of the ATS is displaced.  Subject matter jurisdiction is therefore proper.

However, because this is likely to be the first opinion interpreting the Kiobel decision, my decision on the subject matter jurisdiction issue is one of first impression and there may be a substantial difference of opinion among judges whether it is correct.  Given that, and rather than proceeding to the complicated issue of choice of law and the fact-intensive task of issuing bellwhether findings that will apply to over 500 plaintiffs, it appears to be more prudent to immediately certify this issue for appeal to the Court of Appeals under 28 U.S.C. § 1292(b) ("When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.").

I will therefore order that the plaintiffs in this case submit an application for appeal of this issue to the Court of Appeals under 28 U.S.C. § 1292.  I will also order that any further proceedings in this case be stayed until the Court of Appeals has ruled on this matter.

## CONCLUSION

For the reasons stated herein, I find that there is subject matter jurisdiction over this case under the ATS, but that this finding presents a controlling question of law as to which there may be a substantial difference of opinion, such that this decision should be immediately appealed to the Court of Appeals under 28 U.S.C. § 1292.

An Order accompanies this opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE