**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ODILLIA MUTAKA MWANI**, *et al.* | |
| **Plaintiffs,** | |
| **v.** | **Case No. 99-cv-125 (GMH)** |
| **AL QAEDA,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This long-lingering case, which concerns the 1998 bombing of the United States Embassy in Nairobi, Kenya, is about to come to a close (at least in this Court) more than 20 years after it was filed in 1999. The current Plaintiffs—more than 500 in all—were citizens of Kenya or businesses located in Nairobi at the time of the bombing. They claim that Al Qaeda, which is the sole remaining Defendant and has defaulted, is liable under the Alien Tort Statute (also known as the Alien Tort Claims Act), 28 U.S.C. § 1350, for the injuries they sustained in the attack. After a bellwether evidentiary hearing on the claims of 8 Plaintiffs, in 2014 the judge previously assigned to this case resolved the claims of 443 Plaintiffs but, for reasons that are not entirely clear, did not enter an enforceable judgment as to any of them. Although the undersigned became the presiding judge in 2017, the case was largely dormant from 2014 until 2021, when Plaintiffs began to re-engage in this litigation. In the past year, Plaintiffs have filed 8 motions, including the 4 currently before the Court: a motion to amend the operative complaint to add 4 new Plaintiffs and enter judgment as to the new Plaintiffs and an existing Plaintiff, all of whom assert claims for wrongful death (ECF No. 151); and 3 motions for entry of judgment as to a number of existing Plaintiffs

(ECF Nos. 150, 154, and 157).[1]  These should be the last substantive motions prior to closing the case.  For the reasons that follow, Plaintiffs' motion to amend is denied and Plaintiffs' motions for entry of judgment are granted.

## I.     RELEVANT BACKGROUND

The Court's prior opinion detailed the history of this case from its inception until the end of 2021 and will not be repeated in full here.  *See Mwani v. Al Qaeda*, No. 99-cv-125, 2021 WL 5800737 (D.D.C. Dec. 7, 2021) [hereinafter, *Mwani III*].  Instead, this decision focuses on events beginning in 2011 with the bellwether evidentiary hearing, although some earlier history is noted to provide context.

### A.     The Bellwether Evidentiary Hearing and Ensuing Decisions

In 2006, Judge Kollar-Kotelly, who was the original presiding judge in this case, granted Plaintiffs' motion for entry of default against Al Qaeda and Osama bin Laden, all other Defendants having been dismissed.[2]  *Mwani v. bin Laden*, No. 99-cv-125, 2006 WL 3422208, at *5 (D.D.C. Sept. 28, 2006).  Plaintiffs later sought default judgments against those two Defendants, proposing a bellwether hearing to determine damages for a small number of representative Plaintiffs, which would then be applied to the remaining Plaintiffs.  ECF No. 89 at 7–8; *see also* ECF No. 94 at 5–

---

[1] The documents most relevant for the resolution of these motions are:  (1) a chart filed by Plaintiffs on September 28, 2021, listing each Plaintiff named in the case and including information such as the claimed injury, where in the record proof of that injury can be found, and whether that Plaintiff's claims have been the subject of a previous dispositive ruling (the "Revised Chart") (ECF No. 145); (2) a motion for entry of judgment as to twelve existing Plaintiffs (ECF No. 150); (3) a motion for leave to amend the operative complaint (ECF No. 151); (4) a motion for entry of judgment as to thirteen existing Plaintiffs (ECF No. 154); (5) a supplemental brief on various legal issues (ECF No. 156); and (6) a motion for entry of judgment as to three existing Plaintiffs (ECF No. 157).  The page numbers cited herein are those assigned by the Court's CM/ECF system.

[2] The original Defendants included, along with Al Qaeda and bin Laden, the United States, Sudan, and Afghanistan. ECF No. 1.

9.  At the suggestion of Judge Kollar-Kotelly, Plaintiffs consented to the jurisdiction of a magistrate judge for all purposes in order to facilitate a more expeditious evidentiary hearing and resolution of the case.

The case was assigned to Judge Facciola in 2010, and at the beginning of 2011, he held a bellwether evidentiary hearing as to 8 of the 540 Plaintiffs.  *See generally Mwani v. Al Qaeda*, No. 99-cv-125, 2014 WL 4749182 (D.D.C. Sept. 25, 2014) [hereinafter, *Mwani I*].[3]  Of those Plaintiffs, 2 sought damages for their own wrongful deaths and 6 sought damages for various physical and psychological injuries as a result of assault and battery.  *Id.* at *9–10.  Judge Facciola heard fact testimony from the 6 living bellwether Plaintiffs—Castro Otiende, Protus Buluma, Wilfred Nderitu, Charles Mogi, Kioko Muema, and Dipak L. Shah (ECF No. 103 at 2; ECF No. 118 at 107; ECF No. 119 at 3)—as well as from Jane Kawira Naivasha, the widow of Plaintiff Abel Mutegi Nijru (ECF No. 119 at 4–5), and Noah Thuo Kimani, the widower of Plaintiff Felistas Thuo (ECF No. 118 at 45–46).[4]  He heard expert testimony from Joan Mwendi Kiema-Ngunnzi, who testified that "survivors of the bombing suffered post-traumatic stress disorder ['PTSD']" and "social stigma" that attached even to those in the vicinity of the bomb blast who did not suffer physical injuries.  ECF No. 103 at 92–96; *see also Mwani I*, 2014 WL 4749182, at *7.

---

[3] *Mwani I* asserts that there are 523 Plaintiffs.  2014 WL 4749182, at *1.  That is no doubt based on Plaintiffs' repeated representations that this case included 523 Plaintiffs.  *See Mwani III*, 2021 WL 5800737, at *1 n.2.  As noted in *Mwani III*, Plaintiffs now assert that there are 540 Plaintiffs.  *See id.*  Because the number of Plaintiffs is not relevant to this Memorandum Opinion and Order, the Court does not resolve that discrepancy.

[4] Certain Plaintiffs' names appear in different variants in the record of this case.  For example, Felistas Thuo's name appears as "Felistas Naeni Thuo" in the transcript of the bellwether evidentiary hearing (ECF No. 118 at 46), as "Felistus Njeri Thuo" in *Mwani I*, 2014 WL 4749182, at *2, and as "Felistas Njeri Thuo" in the Revised Chart (ECF No. 145-1 at 22, line 414).  Protus Buluma's name appears as "Protus Manvasa Buluma" in *Mwani I*, 2014 WL 4749182, at *2, and as "Protus Manyasa Buluma" on the Revised Chart (ECF No. 145-1 at 5, line 68).  Charles Mogi's name appears as "Charles Makori Mogi" in *Mwani I*, 2014 WL 4749182, at *6, and as "Charles Makoni Mogi" on the Revised Chart (ECF No. 145-1 at 11, line 189).

Before Judge Facciola issued his findings of fact and conclusions of law, he ruled that federal common law would govern the claims in this case, relying on the Supreme Court's decision in *Kiobel v. Royal Dutch Petroleum Co.*  ECF No. 113 at 1 (quoting *Kiobel*, 569 U.S. 108, 114–15 (2013)).  Later, he dismissed bin Laden (who had been killed in May 2011) and allowed the claims against Al Qaeda to proceed.  *See Mwani v. Al Qaeda*, 302 F.R.D. 22, 24–25 (D.D.C. 2014).  Judge Facciola issued findings of fact and conclusions of law in connection with the bellwether evidentiary hearing in September 2014.  *See generally Mwani I*, 2014 WL 4749182.  He dismissed the claims brought by Nijru and Thuo on two independent bases:  because (1) "as deceased individuals, [they] lack[ed] the capacity to sue"; and (2) "the federal common law does not recognize a wrongful death cause of action."  *Id.* at *2, 9.  He further found that Al Qaeda was liable for battery against five of the remaining Plaintiffs—Otiende, Buluma, Nderitu, Mogi, and Muema—and for assault against one—Shah.  *Id.* at *10.

As to damages, Judge Facciola found that the bellwether Plaintiffs had "failed to reasonably prove the extent of their past economic losses or prove by a preponderance of the evidence the extent of their future economic losses," and so denied any award of economic damages.  *Id.* at *11 (internal quotation marks omitted).  For pain and suffering, the Court imposed a baseline award of $5 million and departed upward for more serious injuries, so that Plaintiff Shah was awarded the baseline $5 million for PTSD resulting from the attack; Plaintiffs Otiende, Nderitu, and Mogi, who suffered from both PTSD and permanent scarring, were awarded $6 million each; and Plaintiffs Buluma and Muema, who had both PTSD and vision problems, were awarded $7.5 million each. *Id.* at *12.  Judge Facciola also awarded $150 million per Plaintiff in punitive damages and prejudgment interest on the pain and suffering damages calculated from the date of the bombing to the date of the award.  *Id.* at *12–13.  Addressing how to apply the findings of the bellwether

evidentiary hearing to the remaining Plaintiffs, he accepted Plaintiffs' proposal to submit a Standard Form 95 for each Plaintiff "to enable the Court to determine an appropriate damages matrix for the remaining plaintiffs," specifically noting that the form "sets out the civil and criminal penalties for presenting fraudulent claims and for making false statements."[5]  *Id.* at 13 (internal quotation marks omitted).  Along with those forms, Plaintiffs were to submit a chart including each Plaintiff's name, the nature of his or her injury and tort claim, and the nature of the damages sought, among other things.  *Id.* at *14.  A document labeled "Judgment" was entered that same day (the "September 2014 Order") awarding damages to 6 bellwether Plaintiffs; the 2 deceased Plaintiffs are not mentioned in that document.  ECF No. 122.

Shortly thereafter, Judge Facciola held a status conference to further address damages for the remaining Plaintiffs.  He was concerned that Plaintiffs who suffered PTSD as well as minor physical injuries had "unique and individual" damages not suitable to application of a damages matrix drawn from the findings of *Mwani I.*  ECF No. 153 at 3.  He also noted that some of those Plaintiffs claimed economic damages, which Plaintiffs' counsel characterized as "nominal."  *Id.* at 3–5.  Judge Facciola proposed using Dipak Shah's award as the measure of those Plaintiffs' damages, in lieu of attempting to calculate damages on a more individualized basis.  *Id.* at 5. Plaintiffs' counsel agreed:

JUDGE FACCIOLA:          Well, if we were going to proceed entirely on a bellwether kind of analysis, if you would look at page 25 of my opinion [that is, *Mwani I,* 2014 WL 4749182,

---

[5] Standard Form 95 is "a form prescribed by the Justice Department for presentation of claims" against the United States, which "instructs claimants to describe the incident causing the injury, to state the amount of the claim in dollars, and to provide information regarding witnesses to the incident and insurance coverage."  *GAF Corp. v. United States*, 818 F.2d 901, 906 & n.16 (D.C. Cir. 1987); *cf.* 28 C.F.R. § 14.2 ("[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident . . . .").  The form itself warns that there are civil and criminal penalties for presenting fraudulent claims or making false statements.  Claim for Damage, Injury, or Death, U.S. Gen. Servs. Admin., https://www.gsa.gov/forms-library/claim-damage-injury-or-death (follow "SF95-07a.pdf" link).  Presumably, counsel for Plaintiffs collected Form 95s because the United States was a defendant before it was dismissed from the case in 1999.  *See* ECF Nos. 37–38.

at *12], in the column there, you've got No. 3, Shah, who got a $5 million award for PTSD. Then, as you know, we awarded pre-judgment interest, according to the chart and calculation at page 29 [*id.* at *13], and then punitive damages. So that ultimately on page 31 [*id.* at *14], Shah gets a total award of over $161,309,500. Would it be acceptable to you to use Shah as the bellwether and give the remaining plaintiffs what Shah got?

MR. MUSOLINO:          Yes, Your Honor.

JUDGE FACCIOLA:        So then we would be finished, without consideration of specific physical injuries and economic damages?

MR. MUSOLINO:          Yes, Your Honor.

JUDGE FACCIOLA:        All right. So then we'll proceed in that manner. So then all we need is that chart from you.

                       *       *       *       *       *       *       *

JUDGE FACCIOLA:        So then we will wait for your charts and then I'll proceed to do—using Shah as the bellwether, to do a chart of the damages that are going to be allowed to all the other people, all right?

MR. MUSOLINO:          Thank you, Your Honor.

JUDGE FACCIOLA:        Then we'll enter final judgment.

MR. MUSOLINO:          Thank you very much, Your Honor.

ECF No. 153 at 5, 6 (italics and some initial capitalization omitted); *see also Mwani v. Al Qaeda*, No. 99-cv-125, 2014 WL 6463227, at *1 (D.D.C. Nov. 18, 2014) [hereinafter, *Mwani II*] (noting that at the October 3, 2014 status hearing, Plaintiffs "agreed to use the damages awarded to Dipak L. Shah," who had been awarded $5 million in pain and suffering damages plus interest and $150 million in punitive damages, "as a bellwether for damage awards to the remaining plaintiffs").

Two weeks later, Plaintiffs submitted a "damages matrix chart" (the "Original Chart") via email to Judge Facciola's chambers.[6]  *See* ECF No. 125 at 1.  Plaintiffs explained that the Original Chart omitted certain Plaintiffs "for various reasons, including duplications or the unavailability of a reliable Form 95."  *Id.*  Plaintiffs sought judgment "only for those plaintiffs identified on the [Original] Chart."  *Id.*  In addition, "[f]or completeness only," Plaintiffs included "the names of wrongful death claimants," while noting that the "[w]rongful death claims have been dismissed."  *Id.* at 2.  One week later, Plaintiffs filed over 900 pages of Standard Form 95s.  Those forms described the injuries of most Plaintiffs, although a significant number—over 90 individuals—did not submit such evidence.  ECF No. 126; *see also* ECF No. 145-1.  Rather, the Form 95s for those individuals asserted only economic injuries.

Judge Facciola issued his second findings of fact and conclusions on November 18, 2014, awarding 374 Plaintiffs the same amount that he had awarded Shah.  *Mwani II*, 2014 WL 6463227, at *1–4.  Relying on *Mwani I*, Judge Facciola did not award damages to the 17 Plaintiffs who claimed damages under a wrongful death theory.  *Id.*, at *4.  He also declined to award damages to 45 business entities, "since only natural persons can experience pain and suffering as a result of a common law battery or assault," and to one Plaintiff who, as a minor, lacked the capacity to sue in his own right.  *Id.*  A document labeled "Second Judgment" was entered as to the 374 Plaintiffs who received a damages award (the "November 2014 Order").  ECF No. 129.  Plaintiffs who were dismissed or did not receive an award of damages pursuant to the decision in *Mwani II* were not mentioned.  Thus, the September 2014 Order and the November 2014 Order together award dam-

---

[6] That chart is not available on this case's electronic docket.

ages to 380 Plaintiffs.  Judge Facciola has also ruled that 63 Plaintiffs—both individuals and business entities—are not entitled to damages and should be dismissed from the case.  The case was administratively closed the next day.

In December 2014, Plaintiffs filed a motion for leave to register the September 2014 Order and the November 2014 Order pursuant to 28 U.S.C. § 1963 so that they could be executed in other districts.  ECF No. 130.  Judge Facciola retired in December 2014 without ruling on that motion and there was a lull in these proceedings for over two years.

### B.    Plaintiffs' Reemergence

The case was transferred to the undersigned in February 2017, when Plaintiffs' counsel reappeared to file a status report noting their pending motion.  ECF No. 131.  The Court granted the motion (in error, as noted below) and counsel went to ground for approximately four more years.  *See* ECF Nos. 132, 149.

In early 2021, Plaintiffs filed a motion seeking a status hearing, which suggested that they were planning to file a slew of motions on issues ranging from reviving claims against Sudan (whom Plaintiffs had voluntarily dismissed in 2002 (ECF No. 61)) and adding new Defendants, to reconsidering Judge Facciola's ruling on wrongful death claims and seeking additional discovery.  ECF No. 133 at 4–5.  The Court held a hearing at which it expressed surprise that this 22-year-old case was still live and emphasized the need to bring it to a close.  ECF No. 139 at 6–8, 13, 18, 23, 26, 37.  At the request of Plaintiffs, the Court entered an order (the "July 8, 2021 Order") allowing Plaintiffs to file their final contemplated motions in two stages.  ECF No. 138.  The first-stage motions, which were to cover issues such as discovery and the severance of certain claims under Rule 21 of the Federal Rules of Civil Procedure, would be filed by August 31, 2022.  *Id.* at 1.  The second-stage motions (which are at issue here) were to be filed by January 31, 2022, and comprise

"any motion to add parties or reinstate parties or claims" and any motion to enter judgment as to existing Plaintiffs who had not had judgment entered in their favor or been dismissed. ECF Nos. 137–138. Although the Court entered such an order, it made clear at the hearing that each motion would be evaluated on its merits when submitted and might well be denied. ECF No. 139 at 29–30, 37. The July 8, 2021 Order also provided (again at Plaintiffs' suggestion) that, if a motion for entry of judgment for an existing Plaintiff was not filed by the deadline, the Court could dismiss that Plaintiff's claims *sua sponte*. ECF No. 137 at 7; ECF No. 138 at 2. Further, it required Plaintiffs to file a chart that, like the one lodged with Judge Facciola in 2014, identified as to each Plaintiff "the current status as to the entry of any judgment or the application of any ruling declining the entry of judgment," as well as details including the nature of each Plaintiff's alleged injury and the evidentiary support for that injury—in short, whether a Form 95 had been filed and, if so, where in the record it could be found. ECF No. 138 at 1–2.

Plaintiffs filed their first-stage motions and the chart as ordered. However, the chart filed was neither accurate nor compliant with the Court's Order (*see* ECF No. 144), so Plaintiffs filed the Revised Chart in September 2021 (ECF No. 145). As for the August 31 motions, each of them bordered on frivolous and was denied on the ground that it sought relief that was not contemplated by settled law. *See generally Mwani III*, 2021 WL 5800737. In addition, the Court issued an Order to Show Cause why the order allowing registration of the September 2014 Order and November 2014 Order should not be vacated because neither was an enforceable judgment under the Federal Rules of Civil Procedure. ECF No. 147. Specifically, that Order to Show Cause observed that those orders were not final judgments pursuant to Rule 54 of the Federal Rules of Civil Procedure because they did not resolve all claims in this action and the Court has not certified them as final judgments and they therefore could not be executed in any jurisdiction. *Id.* at 1–2. After

evaluating Plaintiffs' response to the Order to Show Cause (ECF No. 148), the Court vacated its order allowing registration for the reasons outlined in the Order to Show Cause (ECF No. 149).

### C.     The Second-Stage Motions

On January 31, 2022, Plaintiffs filed three second-stage motions:  (1) a motion to amend the operative complaint to include new Plaintiffs and to enter judgment as to the new Plaintiffs and one existing Plaintiff, (2) a motion to enter judgment as to certain existing Plaintiffs (the "First Motion for Judgment"), and (3) a motion for extension of time to file additional motions.  ECF Nos. 150–152.

The motion to amend seeks to add four individuals as Plaintiffs claiming damages for the wrongful death of a relative who is an existing Plaintiff:  (1) Jane Kawira Naivasha, who testified at the bellwether evidentiary hearing as the widow of Plaintiff Abel Mutegi Nijru; (2) Noah Thuo Kimani, who testified at the bellwether evidentiary hearing as the widower of Plaintiff Felistas Thuo; (3) Martin Meme, the son of Plaintiff Catherine Mukethi Ibere; and (4) Janet Waruguru Kibaki, widow of Plaintiff Simon Mwangi Njima.[7]  ECF No. 151 at 3, 5; ECF Nos. 151-2 through 151-5.  In addition, the motion seeks entry of judgment in the amount of $5 million in pain and suffering damages, plus interest, and $150 million in punitive damages for each of those four putative new Plaintiffs and for existing Plaintiff Odillia Mutaka Mwani, the widow of a person killed in the bombing.[8]  ECF No. 151 at 3; ECF No. 151-1.  Odillia Mwani and all four putative new Plaintiffs filed declarations regarding alleged psychological injuries caused by the death of their family members.  ECF Nos. 151-1 through 151-5.  However, the motion to amend also asserts that

---

[7] Although Judge Facciola ruled that deceased individuals did not have the capacity to sue, *see Mwani I*, 2014 WL 4749182, at *2, no order was entered dismissing such Plaintiffs, so the Court continues to characterize them as existing Plaintiffs.

[8] The Revised Chart lists Odillia Mutaka Mwani as deceased.  ECF No. 145-1 at 2, line 1.  That appears to be an error. In her Form 95 and new declaration, she asserts that her husband died in the bombing.  *See* ECF No. 126-1 at 1; ECF No. 151-1 at 1.

Plaintiffs do not seek a reconsideration of Judge Facciola's ruling that wrongful death claims are not recognized under federal common law; rather, the motion has been filed "to facilitate appellate review." ECF No. 151 at 1 n.1, 3–4.

The First Motion for Judgment seeks judgments in the amount of $5 million in pain and suffering damages, plus interest, and $150 million in punitive damages for twelve existing Plaintiffs: (1) Emmanuel Kioko Muema, (2) Evans Mukunga Muita, (3) Wilfred Ngunjiri Nderitu, (4) Lilian Nkatha Guantai, (5) Joseph Kilo Akumu, (6) Micheal[9] Njogu Kariuki, (7) Philip Kyalo Mauyu, (8) Monica A. Mbori, (9) Lydia Mudanya, (10) Rose W.M. Muema, (11) Joyce Ndunge Mutinda, and (12) Florence Raboke.[10] ECF No. 150. Plaintiffs provided Form 95s for Emmanuel Muema, Evans Muita, and Wilfred Nderitu, which are copies of the Form 95s that were filed in this case in 2014. *Compare* ECF No. 150-1 at 1 (Emmanuel Muema), 3 (Evans Muita), 5 (Wilfred Nderitu) *with* ECF No. 126-1 at 3 (Emmanuel Muema), 15 (Evans Muita), and 17 (Wilfred Nderitu). With the exception of Michael Kariuki, who filed no supporting documents, the other existing Plaintiffs who brought this motion filed declarations detailing their experiences of the bombing and consequent injuries. *See* ECF No. 150-3 at 1–31.[11]

The motion for an extension of time sought a further 28 days to file so-called second-stage motions, that is, motions to add parties or claims and motions for entry of judgment. ECF No. 152 at 1. Plaintiffs' counsel asserted that he had "undertaken substantial efforts through conventional

---

[9] So spelled in the motion, although the Revised Chart reflects the more traditional spelling, "Michael," as does a later stipulation withdrawing this motion as to him. *Compare* ECF No. 150 at 7 *with* ECF No. 145-1 at 8, line 135, *and* ECF No. 159 at 1. The Court will use the spelling "Michael" hereinafter.

[10] The attentive reader will have noticed that two of those individuals—Emmanuel Muema and Wilfred Nderitu— were already awarded damages greater than those sought in this motion as a result of the bellwether trial, at which both of them testified. *See Mwani I*, 2014 WL 4749182, at *4–7, 12. That issue is addressed below.

[11] A declaration from Judith Mutundi Kyalo is also attached to the motion. ECF No. 150-3 at 32–36. She is an existing Plaintiff who is one of the movants seeking entry of judgment in a later-filed motion for entry of judgment—the third. *See* ECF No. 157 at 7.

communications, social media, and mass media in Kenya to, among other things, locate and secure information from those victims of the 1998 Embassy bombing whose claims would otherwise be subject to dismissal." *Id.* That resulted in "approximately 2,000 inquiries and requests for assistance, from or on behalf of over 850 individuals," including "Plaintiffs, non-Plaintiffs, non-clients, representatives and family members, counsel for individual claimants, and counsel for groups of Plaintiffs." *Id.* at 3–4.

While the motion for extension of time was still pending, Plaintiffs filed another motion (the "Second Motion for Judgment"), which seeks entry of judgment in the amounts noted above—$5 million pain and suffering damages, plus interest, and $150 million in punitive damages—for thirteen existing Plaintiffs: (1) Anne N. Kingara, (2) Catherine W. Chabi, (3) Daniel Kimawi Muita, (4) Edward Waihenya Nuthu, (5) James Kimiri Kamau, (6) Jane Nyambura Miringu, (7) Joseph Mwangi Nganga, (8) Joyce Njoki Miringu, (9) Lucy Waithera Mwangi, (10) Margaret Wambui Miringu, (11) Rachel Wanjeri Kingara, (12) Sarah Kuya Etenyi, and (13) Stanley Alex Maina Gatu. ECF No. 154 at 6–9. Each of those Plaintiffs filed a declaration similar to those filed in the first motion for entry of judgment. *See* ECF No. 154-1.

At a motions hearing on February 17, 2022, the Court expressed its concern that Plaintiffs' motions—particularly the motion to amend and the motion for an extension of time—threatened to prolong this already protracted case. *See generally* Rough Transcript of Feb. 17, 2022 Hearing [hereinafter, Feb. 17, 2022 Tr.] (on file with the Chambers of the undersigned). Justifying the extended dormancy of this case between Judge Facciola's 2014 decisions and Plaintiffs' 2021 motion suggesting a renewed interest in litigating, counsel asserted that his firm had made "exhaustive" attempts since 2014 to reconnect with Plaintiffs with whom it had lost touch but also admitted that the firm was primarily "pursuing a legislative solution" for its clients and that the

litigation "took a back seat" to those efforts.  Feb. 17, 2022 Tr. at 5–12.  As to the motions for

which Plaintiffs were seeking the extension of time, counsel assured the Court that he did not seek

to amend the operative complaint further to add Plaintiffs.  Instead, the focus of any additional

motions would be to provide evidence of injury for as many of the 90-odd existing non-business

entity Plaintiffs who had not yet done so.  *Id.* at 6–7.

After the hearing, the Court granted Plaintiffs' motion for an extension of time to file an

additional motion for entry of judgment by February 28, 2022.  ECF No. 155.  The Third Motion

for Judgment seeks judgment—again in the same amounts noted above—for three existing Plain-

tiffs: (1) Judith Mutindi Kyalo, (2) Edward M. Kimani, and (3) Rose Chepkoy.  ECF No. 157 at

7–8.  Each request is supported by a declaration.  *See* ECF No. 157-1.

In conjunction with the Third Motion for Judgment, Plaintiffs filed two stipulations.  One

withdraws the First Motion for Judgment to the extent it seeks judgment as to Emmanuel Muema

and Wilfred Nderitu, noting that judgments have already been entered in their favor (as the Court

had informed them previously, *see* e-mail chain dated Feb. 3, 2022 (on file with the Chambers of

the undersigned)).  ECF No. 158.  The other withdraws the Second Motion for Judgment as to

Michael Kariuki.  ECF No. 159.

Thus, the following motions are currently before the Court:

1.    A motion to amend the operative complaint to add as new wrongful death
      Plaintiffs (1) Jane Naivasha (2) Noah Kimani, (3) Martin Meme, and (4)
      Janet Kibaki, and to enter judgment as to those four putative new Plaintiffs
      as well as for existing Plaintiff Odillia Mwani.

2.    The First Motion for Judgment, which seeks judgment in favor of nine ex-
      isting Plaintiffs (the requests as to Emmanuel Muema, Wilfred Nderitu, and
      Michael Kariuki having been withdrawn): (1) Evans Muita, (2) Lilian
      Guantai, (3) Joseph Akumu, (4) Philip Mauyu, (5) Monica Mbori, (6) Lydia
      Mudanya, (7) Rose Muema, (8) Joyce Ndunge Mutinda, and (9) Florence
      Raboke.

3.      The Second Motion for Judgment, which seeks judgment in favor of thirteen existing Plaintiffs: (1) Anne Kingara, (2) Catherine Chabi, (3) Daniel Muita, (4) Edward Nuthu, (5) James Kamau, (6) Jane Miringu, (7) Joseph Nganga, (8) Joyce Miringu, (9) Lucy Mwangi, (10) Margaret Miringu, (11) Rachel Kingara, (12) Sarah Etenyi, and (13) Stanley Gatu.

4.      The Third Motion for Judgment, which seeks judgment in favor of three existing Plaintiffs: (1) Judith Kyalo, (2) Edward Kimani, and (3) Rose Chepkoy.

## II.   DISCUSSION

### A.   Motion to Amend

A motion for leave to amend a complaint to add new parties must comply with both Rule 15 and Rule 20 of the Federal Rules of Civil Procedure.  *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. CONSOL Energy Inc.*, No. 20-CV-1475, 2020 WL 7042815, at *3 (D.D.C. Dec. 1, 2020).  Under Rule 20, "[p]ersons may join in one action as plaintiffs" if two conditions are met: (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1). "[T]he Rule's 'same transaction' requirement is interpreted broadly 'to permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'"  *Int'l Union, United Mine Workers of Am.*, 2020 WL 7042815, at *3 (quoting *Alexander v. Edgewood Mgmt. Corp.*, 321 F.R.D. 460, 462 (D.D.C. 2017)).  To satisfy that requirement, claims must merely be "'logically related.'"  *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (quoting *Maverick Entm't Grp., Inc. v. Does 1–2,115*, 810 F. Supp. 2d 1, 12 (D.D.C. 2011)).  "The second 'common question' element requires 'only that there be some common question of law or fact as to all [of plaintiff's] claims.'"  *Int'l Union, United Mine Workers of Am.*,

2020 WL 7042815, at *3 (alteration in original) (quoting *Parks v. District of Columbia*, 275 F.R.D. 17, 18 (D.D.C. 2011)).

Rule 15 mandates that a court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether to allow a party to amend a complaint, courts may consider 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Bayatfshar v. Aeronautical Radio, Inc.*, 934 F. Supp. 2d 138, 143 (D.D.C. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As long as a district court provides a "sufficient reason" for the denial of a motion for leave to amend, it has not abused its discretion. *Caribbean Broad. Syst., Inc. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

Although the proposed amendments meet the Rule 20 standard—the claims all arise out of the same occurrence (the 1998 bombing of the U.S. Embassy in Nairobi) and involve a common question of fact or law (whether Al Qaeda is liable for injuries sustained from the bombing)—they do not meet the requirements of Rule 15, because the amendments are both futile and unduly delayed.[12]

---

[12] Local Civil Rule 7(i) requires a motion for leave to amend a pleading to be "accompanied by an original of the proposed pleading as amended." LCvR 7(i). Plaintiffs did not attach a proposed amended complaint to their motion to amend, nor did they later submit a proposed amended complaint even after the Court reminded them that one was required. *See* Feb. 17, 2022 Tr. at 14 (stating, "I don't have an amended complaint from you. I would need one" while discussing the motion to amend). That provides an independent reason to deny the motion to amend. *See, e.g.*, *Friends of Animals v. Pruitt*, 258 F. Supp. 3d 91, 93 (D.D.C. 2017) ("The Court of Appeals has repeatedly 'faulted litigants for [the] shortcoming' of failing to attach a copy of their proposed amended complaint to a motion for leave to file an amended complaint, and it noted in *Schmidt* that failure to attach a copy of a proposed amended complaint is a reason to deny a motion for leave to amend." (alteration in original) (citing *Schmidt v. United States*, 749 F.3d 1064, 1069 (D.C. Cir. 2014))). Such denials are normally without prejudice to refiling a compliant motion, however. *See, e.g.*, *Creecy v. District of Columbia*, No. 10-cv-841, 2011 WL 1195780, at *11 (D.D.C. Mar. 31, 2011) ("[T]he Court shall deny [the plaintiff's] motion to amend without prejudice; [the plaintiff] may file a new motion for leave to amend that complies with Local Rule 7(i).").

1.     Futility

Amendment is futile where the allegations in the proposed amended complaint "would not survive a motion to dismiss." *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  Thus, the "review for futility is functionally 'identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint.'" *Barry v. Haaland*, No. 19-cv-3380, 2021 WL 5992094, at *1 (D.D.C. July 23, 2021) (quoting *In re Interbank Funding Corp.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010)).  A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint on the basis that it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

Here, the proposed amendments seek to allege wrongful death claims against Al Qaeda on behalf of four putative new Plaintiffs and to enter judgment in favor of an existing Plaintiff on a wrongful death claim.  However, Judge Facciola has already held that federal common law governs the claims in this case (*see* ECF No. 113 at 1 (relying on *Kiobel*, 569 U.S. at 114–15)) and that federal common law does not recognize a cause of action for wrongful death, *Mwani I*, 2014 WL 4749182, at *9.  Those rulings are law of the case.  *See, e.g.*, *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (stating that under the law-of-the-case doctrine, "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*"); *see also United States v. Eilberg*, 553 F. Supp. 1, 3 (D.D.C. 1981) (noting that the law-of-the-case doctrine has "been applied to situations in which a federal district judge is presented with a prior decision of another district judge").  Although a court has the *authority* to "overrule or ignore an earlier decision[,] . . . this power should only be used in extraordinary circumstances." *Eilberg*, 553 F. Supp. at 3.  Indeed, "[t]he Supreme Court has instructed the lower courts to be 'loathe' to reconsider issues already decided 'in the absence of extraordinary circumstances such as where

the initial decision was clearly erroneous and would work a manifest injustice.'"[13] *LaShawn A.*, 87 F. 3d at 1393 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

Here, Plaintiffs have not suggested any such extraordinary circumstances.  Indeed, they have explicitly disclaimed seeking reconsideration of Judge Facciola's prior decisions.  ECF No. 151 at 1 n.1, 3–4; *see also* ECF No. 156 at 3 n.3.  More, the Court sees no obvious error in those rulings.  "While a court is instructed by the Federal Rules of Civil Procedure to grant leave to amend 'freely,'" such leave is not required where it is clear that the proposed amended claims "must fail, as a matter of law, in light of the record in the case.  Few circumstances come to mind where 'justice' might 'require' a Court to permit the addition of a doomed claim when the inevitable result is summary dismissal pursuant to Rule 12(b)(6)."  *Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2006).

The motion to amend will be denied as futile.  *See, e.g.*, *Simpson v. Wells Fargo Bank*, No. 15-CV-1487, 2016 WL 10570967, at *2 (S.D.N.Y. Dec. 15, 2016) (dismissing claims under Rule 12(b)(6) pursuant to the law of the case because they were barred by a prior ruling); *Alexander & Baldwin, Inc. v. C&H Sugar Co.*, No. 09-CV-1878, 2010 WL 11508374, at *7–8 (C.D. Cal. Apr. 11, 2010) (dismissing counterclaims based on the law of the case doctrine).

### 2. Undue Delay and Burden on the Court

Although in *Foman*, the Supreme Court noted that "undue delay" can be a reason to deny a motion to amend, 371 U.S. at 182, many courts have held that mere delay is not enough.[14]  *See,*

---

[13] The Court explores the law of the case doctrine further in the Memorandum Opinion and Order issued contemporaneously with this one, ruling, among other things, that certain damages awarded in this case without sufficient evidentiary support were clearly erroneous and worked a manifest injustice.

[14] The Tenth Circuit has squarely rejected the notion that a court must find prejudice or bad faith in addition to delay before denying leave to amend, reasoning that such a rule "conflicts with *Foman*, where the Court listed undue delay' as an independent reason to deny leave to amend.'"  *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1133 (10th Cir. 1987).  One court in this Circuit has recently suggested that each of the five reasons included in *Foman*—"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

*e.g.*, 6 Mary Kay Kane, *Federal Practice & Procedure* § 1488 (3rd ed.) ("In most cases, delay alone is not a sufficient reason for denying leave."). Those courts—and the D.C. Circuit is one of them—hold that there must be some additional harm, such as prejudice or bad faith, for a delay to be considered "undue." *See, e.g.*, *Caribbean Broad. Syst.*, 148 F.3d at 1084 (indicating that delay, without evidence of bad faith or prejudice, is not a sufficient basis on which to deny a motion for leave to amend). While courts conventionally consider prejudice to the non-moving party caused by delay, burden on the court itself will also support denial of a motion to amend. *See, e.g.*, *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990) ("Beyond prejudice to the parties, a trial court can deny amendment when concerned with the costs that protracted litigation places on the courts. Delay impairs the 'public interest in the prompt resolution of legal disputes.'" (quoting *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988))); *Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 754 (E.D. Ky. 2019) ("At some point, a party's delay justifies denying leave to amend when the 'delay' become 'undue,' 'placing an unwarranted burden on the court' . . . ." (quoting *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806 (6th Cir. 2005))); *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 640 (E.D. Pa. 2009) ("Delay 'becomes "undue," and thereby creates grounds for the district court to refuse leave [to amend], when it places an unwarranted burden on the court or when the

---

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment," 371 U.S. at 182—constitutes an "independent reason[ ] such a motion might be denied." *Food & Water Watch v. U.S. Dep't of Agric.*, No. 17-cv-1714, 2019 WL 2423833, at *4 n.3 (D.D.C. June 10, 2019). However, that opinion does not cite or discuss the D.C. Circuit's decision in *Caribbean Broadcasting System*. In that case, the Court of Appeals stated that "[t]he length of a litigation is relevant only insofar as it suggests either bad faith on the part of the moving party or potential prejudice to the non-moving party should amendment be allowed." *Caribbean Broad. Sys.*, 148 F.3d at 1084. The D.C. Circuit found that the district court had erred by denying leave to amend because the lower court "never intimated a concern with bad faith or prejudice." *Id.* However, *Caribbean Broadcasting System* does not address *Foman*'s assertion that leave to amend should be granted "[i]n the absence of any apparent or declared reason—such as *undue delay*, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," which suggests that undue delay is an independent reason for denial. *Foman*, 371 U.S. at 182 (emphasis added).

plaintiff has had previous opportunities to amend.'" (quoting *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008)), *aff'd* 377 F. App'x 150 (3d Cir. 2010)); *Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785, 2009 WL 2222739, at *2–3 (S.D.N.Y. July 15, 2009) (denying a motion to amend submitted a decade after the case was filed in part because the court would "suffer undue prejudice in the form of both significant expenditure of additional resources and further delay"). "As such, the inquiry into undue delay includes consideration of the court's '[i]nterests in judicial economy and finality,' as well as a 'focus on the movant's reasons for not amending sooner.'" *Goldfish Shipping*, 623 F. Supp. 2d at 640 (alteration in original) (quoting *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004)).

Here, the Court expressed its understanding *in 2014* that, once Dipak Shah's damages calculation was applied to Plaintiffs who suffered psychological injury with or without minor physical injuries, the case would come to an end. *See* ECF No. 153 at 5, 6. Plaintiffs' counsel agreed. *Id.* Nonetheless, counsel now seeks to amend the complaint to add new claims. Granting that motion would cause further delay in this already unreasonably protracted case. First, pursuant to Rule 5(a)(2), "a pleading that asserts a new claim for relief" against a defaulting party "must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2). The purpose of that provision is to "ensure[ ] that a party, having been served, is able to make an informed decision not to answer a complaint without fearing additional exposure to liability for claims raised only in subsequent complaints that are never served." *Blair v. City of Worcester*, 522 F.3d 105, 109 (1st Cir. 2008). The proposed amendments to the operative complaint include new claims for wrongful death by putative new Plaintiffs. ECF No. 151 at 5, 7. It also includes a new wrongful death claim asserted by Odillia Mwani based on her husband's death. *Id.* at 1, 7. It would therefore have to be served on the defaulting Defendant. *See, e.g., Gorton v. Air & Liquid Sys. Corp.*, Civil Action No. 1:17-1110,

2022 WL 89843, at *2 & n.2 (E.D. Pa. Jan. 7, 2022) (finding that a complaint amended to include "a new wrongful death claim asserted by [the plaintiff] based on her husband's death . . . contained a *new claim*" and therefore was required to be served on the defendant under Rule 5(a)(2)); *Travelers Cas. & Surety Co. of Am. v. Rae*, No. 15-cv-3643, 2017 WL 4698064, at *2 (E.D. Pa. Oct. 19, 2017) (noting that a defaulting party must be served with an amended complaint that adds a new plaintiff); *Anguelov v. Event Parking, Inc.*, No. 2:16-cv-273-, 2017 WL 8790975, at *2 (M.D. Fla. June 1, 2017) (finding that a complaint that added a new plaintiff must be served on a defaulting defendant pursuant to Rule 5(a)(2)).   Indeed, without such service, the putative Second Amended Complaint would not become operative and any grant of the motion to amend would be a nullity.   *See Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2d Cir. 1977) (holding that an amended complaint that must be served pursuant to Rule 5(a)(2) does not become operative on filing, but only upon service); *accord Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *7 (E.D. Mich. Oct. 5, 2020).   And service in this case is complicated.   Judge Kollar-Kotelly previously ruled that, to accomplish service of the operative complaint on Al Qaeda, Plaintiffs had to publish a notice approved by the Court in three newspapers (the Daily Washington Law Reporter, the International Herald Tribune, and Al-Quds Al-Arabi (in Arabic)) for six weeks.   ECF No. 23 at 5.   The D.C. Circuit approved that manner of service.   *See Mwani v. bin Laden*, 417 F.3d 1, 8, 14 (D.C. Cir. 2005).   Plaintiffs have not suggested that service would now be a simple task. Thus, the case would be additionally delayed while Plaintiffs attempted to serve any newly-amended complaint on Al Qaeda.

Plaintiffs argue that service of an amended complaint would not be required because the proposed changes to the complaint are not substantial.   ECF No. 156 at 3–4.   As support, they cite *Belkin v. Republic of Iran*, but it is inapposite.   In *Belkin*, the plaintiff had alleged that Iran was

liable for the death of his wife who was killed in an attack by a terrorist organization purportedly supported by that nation. 667 F. Supp. 2d 8, 11–18 (D.D.C 2009). He originally brought suit under 28 U.S.C. § 1605(a)(7), but during the pendency of the case, Congress repealed that provision and replaced it with a new provision, 28 U.S.C. § 1605A. *Id.* at 18. The new provision created a private right of action for plaintiffs to sue foreign sovereigns who were state sponsors of terrorism rather than requiring them to proceed under "on a specific, non-federal source of law," such as state tort law. *Id.* at 20–21. The plaintiff amended his complaint to allege a violation of the new provision but did not serve the amended complaint on the defendants. *Id.* at 12, 20. The court held that service of the amended complaint was not necessary because the causes of action pleaded were "the same," they were simply "available under another source of law—namely, Section 1605A." *Id.* at 20. That is not the case here, where Plaintiffs attempt to assert new claims on behalf of five individuals, four of whom are not existing Plaintiffs, and seek judgments in the amount of hundreds of millions of dollars. Plaintiffs have not cited a single case—and the Court has not found one—holding that such a proposed amendment is so insubstantial as to avoid the dictates of Rule 5(a)(2).[15]

Plaintiffs also suggest that Rule 15(b)(2) obviates the need to serve an amended complaint pursuant to Rule 5(a)(2). ECF No. 156 at 4–6. That contention also fails. Rule 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

---

[15] Plaintiffs also argue that the Court should assume that serving the amended complaint would make no difference because "there can be no meaningful contention that the remaining defendant—ignoring hundreds of claims amounting to tens of billions of dollars in damages—would have chosen to litigate if the claims of five [additional Plaintiffs] were included." ECF No. 156 at 4. Although it may be tempting given the conduct underlying the claims in this case, the Court will not ignore the requirements of the Federal Rules of Civil Procedure based on such an assumption.

That tool is used when "the course of the trial departs so materially from the image of the contro-versy pictured in the pleadings or during the discovery process that it becomes necessary to adjust the pleadings to reflect the case as it actually was litigated in the courtroom." 6A Mary Kay Kane, *Federal Practice & Procedure* § 1491 (3d ed.). Apparently assuming that providing the Court with declarations in a default case is equivalent to a trial—an assumption for which they provide no support—Plaintiffs argue that Defendant's default should be deemed implied consent. *See* ECF No. 156 at 5–6. But that puts the cart before the horse. Defendant has not yet defaulted on these claims. Moreover, consent to an amendment cannot be implied where the defendant did not have notice of the new claims. *See, e.g.*, *In re Fustolo*, 896 F.3d 76, 86 (1st Cir. 2018) ("Simply put, one cannot give implied consent to litigate a claim for which he or she is not provided notice."); *accord Doe #6 v. Miami-Dade Cty.*, 974 F.3d 1333, 1339 (11th Cir. 2020) ("'[I]mplied consent under Rule 15(b) will not be found . . . if the defendant had no notice of the new issue . . . .'" (first alteration in original) (quoting *Cioffe v. Morris*, 676 F.2d 539, 541–42 (11th Cir. 1982))); *Am. Fam. Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013) ("Implied consent exists where a party has 'actual notice of an unpleaded issue and ha[s] been given an adequate opportunity to cure any surprise resulting from the change in the pleadings.'" (alteration in original) (quoting *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997))). The very purpose of Rule 5(a)(2), requiring service of an amended complaint raising new claims on a defaulting party, is to provide such notice. Indeed, holding that where a defendant has defaulted a plaintiff may substantively amend a complaint pursuant to Rule 15(b)(2) merely by providing additional evidence to the Court would render Rule 5(a)(2) a nullity.

Second, in addition to the delay that would be caused by serving an amended complaint, allowing the amendment would require the Court to determine whether the filing of the new complaint had further effects on the case. In general, "an amended complaint supersedes the original complaint, rendering it of no legal effect." *Marotta v. Cortez*, No. 08-cv-2421, 2008 WL 5044496, at *1 (D. Colo. Nov. 20, 2008); *see also, e.g.*, *Continental Transfer Technique Ltd. v. Federal Gov't of Nigeria*, 697 F. Supp. 2d 46, 55 (D.D.C. 2010) ("When [the plaintiff] filed an amended complaint, [ ] that complaint superseded the original one."). When an amended complaint becomes operative, a default entered as to the prior complaint is generally deemed mooted. *See, e.g.*, *Anselme v. Griffin*, No. 3:20cv5, 2021 WL 2152512, at *3 (W.D. Va. May 26, 2021) (stating that "district courts in other circuits routinely have vacated or set aside 'as moot' a defendant's default on a prior, superseded complaint once the plaintiff's amended complaint is the operative pleading in the case—even if the plaintiff simply repleaded her claims against the defendant" and collecting cases); *Allstate Ins. Co. v. Yadgarov*, No. 11-CV-6187, 2014 WL 860019, at *8 (E.D.N.Y. Mar. 5, 2014) ("[O]nce the original complaint is superseded, a clerk's entry of default on that pleading is mooted."); *cf. Continental Transfer*, 697 F. Supp. 2d at 55 (noting that, because the plaintiff had filed an amended complaint, its pending motion for default judgment "applie[d] to a complaint that no longer forms the basis for this litigation, and the motion is therefore moot"). At the very least, if Defendant did not appear after service, Plaintiffs would have to move for entry of default and then for default judgment as to the new claims.[16] More, at least one court has also held that orders entered in reliance on that prior complaint are also mooted. *See Benavidez v. Piramides Mayas Inc.*, Nos. 09 Civ. 5076, 09 Civ. 9574, 2013 WL 2357527, at *6 (S.D.N.Y. May 24, 2013) (denying reconsideration of an order holding that a decision granting summary judgment against

---

[16] For this reason, even if the Court granted leave to amend, it could not grant the accompanying request to enter judgment as to the new claims.

a defendant "would become void at the moment the amended complaint supersedes the prior com-plaints, because it is based on the prior complaints that would have no legal effect"); *but cf. Bakeir v. Capital City Mortg. Corp.*, 2010 WL 11575159, at *2 (D.D.C. May 14, 2010) (stating, in a removal case, that "[a]llowing the filing of an amended complaint does not nullify every prior order issued by a court," and relying on 28 U.S.C. § 1450, which states that in removal cases, prior orders remain in effect until modified or dissolved by the court).  And so, the filing of a newly-amended complaint in this case would also require inquiry into the legal effect of decisions or orders based on the original entry of default against Al Qaeda from September 2006.  ECF No. 80. Resolving those questions would result in further delay and expenditure of the resources of the Court (and of Plaintiffs).  *See Hallissey*, 2009 WL 2222739, at *2–3 (denying a motion to amend submitted a decade after the case was filed in part because the court would "suffer undue prejudice in the form of both significant expenditure of additional resources and further delay").

Add to this that Plaintiffs' counsel's explanation for the delay is not compelling.  *See, e,g,, Goldfish Shipping*, 623 F. Supp. 2d at 640 ("[T]he inquiry into undue delay includes consideration of the court's '[i]nterests in judicial economy and finality,' as well as a 'focus on the movant's reasons for not amending sooner.'" (second alteration in original) (quoting *USX Corp.*, 395 F.3d at 168)); *see also Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) ("When amend-ment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier.").  Recall that this case is over 20 years old, that Judge Facciola held the bellwether evidentiary hearing almost a dozen years ago, and that he issued orders resolving the claims of the bellwether and other Plaintiffs more than 7 years ago.  Plaintiffs' counsel years ago knew the facts underlying the wrongful death claims of 2 of the 4 individuals sought to be added here because they testified at the bellwether evidentiary hearing in 2011.  *See* ECF No. 118 at 45–

89 (testimony of Noah Kimani); ECF No. 119 at 4–54 (testimony of Jane Naivasha).  Counsel also knew the facts underlying the wrongful death claim of putative new Plaintiff Janet Kibaki because she sought compensation for the death of her husband (Simon Mwangi Njima) in a Form 95 submitted to the Court in October 2014 (ECF No. 126-4 at 95), as did existing Plaintiff Odillia Mwani (ECF No. 126-1 at 1).

Plaintiffs' counsel explains that the individuals whose claims are the subject of the motion for leave to amend failed to contact their attorneys "from the time of the entry of judgments [in 2014] at least to now."  Feb. 17, 2022 Tr. at 15.  Four of those five individuals have included in their declarations representations that they had been difficult to contact since 2014.  Jane Naivasha's and Noah Kimani's email addresses changed around that time (ECF No. 151-2 at 1; ECF No. 151-3 at 1); Odillia Mwani was "out of touch . . . for many years because the contact information [she] had provided became very unreliable" (ECF No. 151-1 at 2); and Martin Meme did not contact counsel in this case "for many years" because he was communicating with "local Kenyan firms" that provided him with inaccurate information, making him skeptical of "claim[s] to be seeking relief for bombing victims"  ECF No. 151-4 at 2.  But Plaintiffs' counsel has shown that he is able to mount an effective outreach effort that allows him to contact existing and potential Plaintiffs in Kenya.  It appears that such efforts simply did not occur for a period of years after the September 2014 Order and the November 2014 Order issued.  Indeed, at the February 17, 2022 hearing, Plaintiffs' counsel admitted that, beginning in 2015 his firm had been "pressing [for] a legislative solution," which caused "a hesitation to go back into the litigation for fear of upsetting the legislative initiatives," so that this case "took a back seat to the legislation without a doubt." Feb. 17, 2022 Tr. at 11–12.  That is not a persuasive explanation for allowing this litigation to stagnate for a period of years before attempting to amend the complaint to add claims about which

counsel knew since 2014 (at the latest).[17]  These facts provide an independent basis to deny the

motion for leave to amend for undue delay.  *See Hoffman v. United States*, 266 F. Supp. 2d 27, 33

(D.D.C. 2003) (finding undue delay where the plaintiffs had "litigated this action, in one form or

another, for nearly twenty years" and had been "afforded ample opportunity to advance their best

arguments," but waited to file their motion to amend even though they "had at their disposal all

the facts necessary to raise the [new] claims" years prior); *see also Cason v. Seckinger*, 231 F.3d

777, 787 (11th Cir. 2000) (affirming the district court's denial of a motion to amend the complaint

filed over 11 years after the original complaint because the causes of action the plaintiffs sought

to add could have been brought much sooner); *Walker v. Greektown Casino, LLC*, No. 05-CV-

70746, 2006 WL 8431920, at *2 (E.D. Mich. June 8, 2006) ("'When amendment is sought at a late

stage in the litigation, there is an increased burden to show justification for failing to move earlier.'

Where the plaintiff knew or should have known of the facts which for the basis of the potential

additional claims and potential additional parties at the time of the original complaint, courts

should deny a motion to amend." (internal citations omitted) (quoting *Wade*, 259 F.3d at 459 (6th

Cir. 2001))); *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) ("[T]he court may deny a

motion to amend when the movant knew or should have known of the facts upon which the amend-

ment was based when the original pleading was filed, particularly when the movant offers no ex-

cuse for the delay.").

---

[17] Plaintiffs did not argue that the wrongful death claims of the four putative new Plaintiffs were not originally pleaded in the operative complaint because it sought to collect wrongful death damages for the deceased individuals to whom they are related.  Even had they, the argument would have failed.  A mistake of law—here, wrongly believing that deceased individuals have the capacity to sue—will not excuse otherwise undue delay under Rule 15(a).  *See Sheldon v. Golden Bell Retreat*, No. 19-cv-1371, 2020 WL 12675934, at *3 (D. Colo. July 16, 2020) ("It is plain that [the plaintiff's] delay in seeking leave to amend has been protracted an explained solely by her counsel's failure to appreciate the legal significance of the evidence in his possession. . . .  [S]uch mistakes of law do not constitute excusable neglect sufficient justify granting leave to amend under Rule 15(a).").

Finally, "a long delay by the movant constitutes laches so that a refusal to permit amend-ment is warranted."  6 Mary Kay Kane, *Federal Practice & Procedure* § 1488 (3rd ed.); *see also Transp. Workers Union of Phila., Local 235 v. Se. Pa. Transp. Auth.*, 137 F.R.D. 220, 224 (E.D. Pa. 1991) (noting that "'[u]nder a theory analogous to laches,'" a long delay can itself "'justify[ ] denial of leave to amend'" (quoting *Adams v. Gould Inc.*, 793 F.2d 858, 868 (3d Cir. 1984))).  As noted, Judge Facciola and Plaintiffs' counsel agreed that this case would end after the entry of the November 2014 Order.  ECF No. 153 at 5, 6.  The case was administratively closed on November 19, 2014, the day after that order was entered.[18]  Since the time Plaintiffs' counsel reappeared in 2021—for example, in the June 30, 2021 status conference—the Court has returned again and again to the point that this case must soon come to a final resolution.  ECF No. 139 at 6, 8, 13, 18, 23, 26, 37; *see also Mwani III*, 2021 WL 5800737, at *1 ("At the status conference held in June 2021, the Court and Plaintiffs' counsel discussed . . . the need to shepherd this case toward final resolution.").  And yet Plaintiffs now attempt to amend their complaint and further extend this superannuated case.  A district court is "not require[d] . . . to tolerate such delays."  *Bethany Pharm. Co. v. QVC, Inc.*, 241 F.3d 854, 862 (7th Cir. 2001).  For these reasons, the motion to amend is denied not only because it is futile, but also because it is unduly delayed and imposes an unjustified burden on the Court.

## B.    Motions for Entry of Judgment

"Upon request of a party entitled to default, Rule 55(b)(2) [of the Federal Rules of Civil Procedure] authorizes a court to enter against the defendant a default judgment for the amount claimed and costs."  *Boland v. Elite Terazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011).

---

[18] The Court recognizes that the administrative closure was erroneous, as Judge Facciola had failed to enter a final, appealable judgment in the case.  Nevertheless, that action (and the fact that the closure was reflected on the docket without objection from Plaintiffs) indicates that the parties and the Court believed the case to be at an end.

"A trial court is vested with broad discretion in deciding a default judgment question." *Grand-bouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987). While a court must "'make an independent determination of the [damages] to be awarded,'" the court has "'considerable latitude'" in making that determination. *United States v. Toso*, No. 17-cv-1092, 2019 WL 451515, at *2 (D.D.C. Feb. 4, 2019) (first quoting *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009), then quoting *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015)). Therefore, a court need not conduct a hearing; it may rely on declarations or affidavits in determining the damages to be awarded. *See, e.g.*, *Boland*, 763 F. Supp. at 68.

Here, Judge Facciola held the bellwether evidentiary hearing to establish a damages matrix, finding that Dipak Shah, the Plaintiff who was found to be a victim of assault and to suffer PTSD as a result of the bombing, was entitled to $5 million in pain and suffering damages, prejudgment interest calculated from 1998 to 2014, and $150 million in punitive damages. *Mwani I*, 2014 WL 4749182, at *12–13. In so finding, Judge Facciola relied in part on expert testimony establishing that "the survivors of the bombing suffered post-traumatic stress disorder and that a unique social stigma attached to these Kenyan victims, a stigma that remains today" and that "each victim of the Embassy bombing," whether physically injured or not, sustained "significant" emotional and psychological injury" from "the scenes that they observed during the bombing and in its aftermath." *Id.* at *8, 11. Judge Facciola then held that those damages should be the basis for other similarly-situated Plaintiffs. *See generally Mwani II*, 2014 WL 6463227; *see also* ECF No. 153. The Court sees no clear error in those determinations and thus no reason to revisit them. *See Lashawn A.*, 87 F.3d at 1393 (stating that under the law-of-the-case doctrine, "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*" unless the decision was "clearly erroneous and would work a manifest injustice"). So, those existing Plaintiffs who have

submitted proof that would support a finding that they are similarly situated to Dipak Shah—that is, that they were injured as victims of assault from the bombing—shall be awarded damages similar to those awarded to Dipak Shah.

Plaintiffs' 3 motions for entry of judgment request that the Court enter judgment in the amount of $164,862,150.46 each in favor of 25 Plaintiffs: (1) Evans Muita, (2) Lilian Guantai, (3) Joseph Akumu, (4) Philip Mauyu, (5) Monica Mbori, (6) Lydia Mudanya, (7) Rose Muema, (8) Joyce Ndunge Mutinda, (9) Florence Raboke (*see* ECF No. 150 at 6–9);[19] (10) Anne Kingara, (11) Catherine Chabi, (12) Daniel Muita, (13) Edward Nuthu, (14) James Kamau, (15) Jane Miringu, (16) Joseph Nganga, (17) Joyce Miringu, (18) Lucy Mwangi, (19) Margaret Miringu, (20) Rachel Kingara, (21) Sarah Etenyi, (22) Stanley Gatu (*see* ECF No. 154 at 6–9); (23) Judith Kyalo, (24) Edward Kimani, and (25) Rose Chepkoy (*see* ECF No. 157 at 7–8).  That amount comprises $5 million in pain and suffering damages, interest on that amount from 1998 (when the bombing occurred) to 2021 in the amount of $14,862,150.46, and $150 million in punitive damages, i.e., the same award given to Shah, interest adjusted.  ECF No. 150 at 4; ECF No. 150-2 at 1; ECF No. 154 at 4–5; ECF No. 157 at 4.

Each of those individuals is an existing Plaintiff and each has submitted either a Form 95 or a more-recently sworn declaration that includes detail exceeding that of most of the Form 95s submitted in this case.  *See* ECF No. 150-1 at 3–4 (Form 95 for Evans Muita); ECF No. 150-3 at 1–4 (declaration of Lilian Guantai), 5–8 (declaration of Rose Muema), 9–12 (declaration of Philip Mauyu), 13–16 (declaration of Lydia Mudanya), 17–20 (declaration of Joyce Mutinda), 21–23 (declaration of Monica Mbori), 24–27 (declaration of Florence Raboke), 28–31 (declaration of

---

[19] As noted, requests as to Emmanuel Muema, Wilfred Nderitu, and Michael Kariuki have been withdrawn.  ECF Nos. 158–159.

Joseph Akumu); ECF No. 154-1 at 1–4 (declaration of Anne Kingara), 5–8 (declaration of Catherine Chabi), 9–12 (declaration of Daniel Muita), 13–16 (declaration of Edward Nuhu), 17–20 (declaration of James Kamau), 21–24 (declaration of Jane Miringu), 25–28 (declaration of Joseph Nganga), 29–32 (declaration of Joyce Miringu), 33–36 (declaration of Lucy Mwangi), 37–40 (declaration of Margaret Miringu), 41–44 (declaration of Rachel Kingara), 45–48 (declaration of Sarah Etenyi), 49–52 (declaration of Stanley Gatu); ECF No. 157–1 (declaration of Judith Kyalo); ECF No. 157-2 (declaration of Edward Kimani); ECF No. 157-3 (declaration of Rose Chepkoy).  To take just a few as examples:  Evans Muita—who submitted a Form 95 in 2014 and again with the motion for entry of judgment—asserted that he was in his office 50 meters from the U.S. Embassy at the time of the bombing, which caused injuries to his head and body.  *Compare* ECF No. 126-1 at 15 *with* ECF No. 150-1 at 3.  Lilian Guantai's declaration asserts that she was in her office across the street from the U.S. Embassy when a "huge blast" threw her under her desk.  ECF No. 150-3 at 3.  She suffered lacerations on the right side of her body and required surgery to remove glass shards from her face; she further suffered depression and anxiety that eventually caused her to leave her job.  *Id.* at 1, 3.  Rose Muema was also in her office near the Embassy at the time of the bombing.  *Id.* at 5, 7.  As a result of the event, she suffered cuts on her face, head, and body; lasting psychological effects, such as fear of loud noises and flashbacks; and social stigma.  *Id.* at 5–7.  Catherine Chabi was working near the Embassy at the time of the bomb blast; when she exited the building, she saw "body parts, debris, and people crying out in pain and suffering."  ECF No. 154-1 at 7.  Her chest and abdomen were injured and inhalation of smoke and dust particles still affects her; she also suffers from PTSD and anxiety.  *Id.* at 6–7.  Jane Miringu was physically injured in the blast while in a vehicle on her way to meet a new client; she cannot recall how she was able to exit the vehicle.  *Id.* at 21, 23.  She also suffers from PTSD, insomnia, nightmares,

social anxiety, claustrophobia, and fear of large cities. *Id.* at 23. Judith Kyalo was a student at a secretarial college near the Embassy and had stepped out to use a phone booth when the bomb exploded. ECF No. 157-1 at 2. She suffered from cuts that had to be stitched without anesthetic at a small clinic because the hospital could not take additional patients. *Id.* She later had reconstructive surgery. *Id.* Further, she sought counseling for trauma and still suffers from panic attacks. *Id.* at 3.

In short, all 25 Plaintiffs seeking entry of judgment have submitted proof that (1) they were physically near the Embassy at the time of the bombing and (2) suffered physical and/or psychological injuries as a result of the incident. As Judge Facciola noted, the Form 95 notes that there are civil and criminal penalties for perjury. *See Mwani I*, 2014 WL 4749182, at *13. Each of the new declarations is sworn "under penalty of perjury under the laws of the United States." *See* ECF No. 150-3 at 1, 5, 9, 13, 17, 21, 24, 28; ECF No. 154-1 at 1, 5, 9, 13, 17, 21, 25, 29, 33, 37, 41, 45, 49; ECF No. 157-1 at 1; ECF No. 157-2 at 1; ECF No. 157-3 at 1. The Court thus finds, as Judge Facciola did with respect to Plaintiffs addressed in the November 2014 Order, that these Plaintiffs have met their burden of showing that they are similarly situated to Dipak Shah and are entitled to similar damages.

The question of the proper amount of prejudgment interest remains. "The decision to award—and how to compute—prejudgment interest rests within the sound 'discretion of the court [subject to] equitable considerations.'" *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp 2d 216, 263 (D.D.C. 2008) (alteration in original) (quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997)); *see also, e.g.*, *Jerra v. United States*, No. 2:12-cv-1907, 2018 WL 1605563, at *13 (C.D. Cal. Mar. 29, 2018) ("In evaluating whether, and how much, to award in pre-judgment interest, a 'court's discretion is generally guided by the interest in making

the wronged party whole (i.e. complete compensation), as well as considerations of fairness.'"
(quoting *Miller v. Schmitz*, No. 1:12-cv-137, 2014 WL 68883, at *1 (E.D. Cal. Jan. 8, 2014)));
*SEC v. Montessoro*, No. 07-61693-CV, 2012 WL 12948750, at *5 (S.D. Fla. Oct. 17, 2012) ("District courts have wide discretion in determining whether and how much interest to assess."). In
*Mwani I*, Judge Facciola found that prejudgment interest on each Plaintiff's compensatory damages award for the period between the bombing and 2014—the year both *Mwani I* and *Mwani II*
were issued—was appropriate and necessary to compensate them for their injuries. *Mwani I*, 2014
WL 4749182, at *13. As noted in the Memorandum Opinion and Order issued contemporaneously
with this one, that calculation will not be updated to reflect the time that has passed between 2014
and today because that period of delay can be laid squarely at Plaintiffs' own feet. *See, e.g.*, *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989) (noting that a court may consider "whether
the plaintiff delayed in . . . prosecuting the action" when determining whether nd how much prejudgment interest will be awarded).

For the individuals that are the subjects of these motions for entry of judgment, Plaintiffs
have calculated prejudgment interest for the period from 1998 to 2021, arriving at a total of
$14,862,150.46—over $3.5 million more than the amount awarded to Shah and the *Mwani II* Plaintiffs.[20] *See* ECF No. 150 at 4; ECF No. 150-2; ECF No. 154 at 4–5; ECF No. 157 at 4. Plaintiffs
have not explained why, as a matter of fairness, these Plaintiffs should be compensated with a
larger damages award than Shah and the *Mwani II* Plaintiffs. After all, whereas Shah and the
*Mwani II* Plaintiffs provided their counsel with evidence supporting their claims in 1999, the Plaintiffs at issue here waited for more than 20 years to provide similar evidence. These Plaintiffs
should not be rewarded with an extra $3.5 million in compensation derived from their delays in

---

[20] To calculate that amount, Plaintiffs used the formula employed by Judge Facciola in *Mwani I*, merely extending it
through 2021. *See Mwani I*, 2014 WL 4749182, at *13; *see also* ECF No. 150-2.

prosecuting this action.  *See, e.g.*, *Osterneck*, 489 U.S. at 176; *Ruff v. Cty. of Kings*, No. CV-F-05-631, 2009 WL 4572782, at *4 (E.D. Cal. Nov. 30, 2009) (excluding time traceable to delay by the plaintiff from the calculation of prejudgment interest).  On the other hand, in light of Judge Facciola's determination that some prejudgment interest was appropriate and necessary to compensate the victims of the bombing for their injuries, *Mwani I*, 2014 WL 4749182, at *13, the Court does not find that the Plaintiffs at issue here should be denied such interest altogether.  Therefore, the Plaintiffs who are the subject of these 3 motions for entry of judgment shall be awarded damages, including prejudgment interest, in an amount equal to the amount awarded to Shah and the *Mwani II* Plaintiffs.

In sum, Plaintiffs' motions for entry of judgment will be granted except to the extent that Plaintiffs request prejudgment interest in an amount larger than that awarded to Shah.

## III.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for leave to file an amended complaint (ECF No. 151) is **DENIED**.  It is further

**ORDERED** that Plaintiffs' motions for entry of judgment (ECF Nos. 150, 154, and 157) are **GRANTED** (except as noted above, as to the amount of prejudgment interest requested).  An order requiring Plaintiffs to submit a proposed final judgment will be forthcoming.


**SO ORDERED.**


Date: April 20, 2022                           _____

                                               G. Michael Harvey
                                               United States Magistrate Judge